[S. F. No. 2761. In Bank.—February 7, 1902.]

## ROBERT SCHAEZLEIN et al., Petitioners, v. GEORGE H. CABANISS, Judge, etc., Respondent.

CONSTITUTIONAL LAW—POLICE POWERS—SANITATION OF FACTORIES AND WORKSHOPS—IMPROPER DELEGATION TO LABOR COMMISSIONER.—The police power of the legislature to provide for the proper sanitation of factories and workshops cannot be delegated to any agency not recognized by the constitution as legislative, and an act authorizing the commissioner of the bureau of labor statistics to make provision against the liability of the inhaling of dust, filaments, or injurious gases in any factory or workshop that it appears to him can be to a great extent prevented by the use of some mechanical contrivance, and to direct that such contrivance shall be provided, and enacting that within a reasonable time it shall be so provided and used, and making it a misdemeanor to violate the act, is unconstitutional and void, as conferring on such commissioner the power to make a law for the individual, and to enforce such rules of conduct as he may arbitrarily prescribe in special cases.

CERTIORARI to the Police Court of the City and County of San Francisco to annul proceedings for the trial, convic-

tion, and judgment of the petitioners.    George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Otto tum Suden, for Petitioners.

F. V. Meyers, for Respondent.

THE COURT.—This is *certiorari* to the police court of the city and county of San Francisco. Petitioners were charged with violating the provisions of "an act to provide for the proper sanitary condition of factories," etc., approved February 6, 1889. That act·declares as follows: "If in any factory or workshop any process or work is carried on by which dust, filaments, or injurious gases are generated or produced that are liable to be inhaled by the persons employed therein, and it appears to the commissioner of the bureau of labor statistics that such inhalation could, to a great extent, be prevented by the use of some mechanical contrivance, he shall direct that such contrivance shall be provided, and within a reasonable time it shall be so provided and used." Section 6 of the act makes it a misdemeanor for any person to violate any of the provisions of the act. (Stats. 1889, p. 3.)

Petitioners were convicted of having unlawfully refused and neglected, after notice, to provide and use a suction exhauster with properly attached pipes, hoods, etc., in a metal-polishing shop, within a reasonable time after having been directed so to do.

The ultimate question presented for consideration under this writ is that of the constitutionality of the act above quoted.

That the legislature may not delegate its law-making functions, excepting to such agents and mandatories as are recognized by the constitution, is, of course, beyond controversy. Equally we think beyond controversy, however, is the right of the state, in the exercise of its police power, to pass reasonable laws for the protection of the health of employees in given vocations, and to make the violation of those laws penal offenses. The limit to which the state may go in this direction is not well defined, but the argument that any such

legislation is an interference with the right of property—
the free right of contract between employer and employee—
has been disposed of and settled by the courts in numerous
decisions. Thus says the supreme court of the United States,
in *Holden* v. *Hardy,* 169 U. S. 366: "The legislature has
also recognized the fact, which experience of legislators in
many states has corroborated, that the proprietors of these
establishments and their operatives do not stand upon an
equality, and that their interests are to a certain extent con-
flicting. The former naturally desire to obtain as much labor
as possible from their employees, while the latter are often
induced by the fear of discharge to conform to regulations
which their judgment, fairly exercised, would pronounce to
be detrimental to their health or strength. In other words,
the proprietors lay down the rules, and the laborers are prac-
tically constrained to obey them. In such a case self-interest
is often an unsafe guide, and the legislature may properly
interpose its authority." So we have upon the statute-books
numerous requirements looking to the safety, and even the
welfare, of employees in different vocations. Protection
against the inclemency of the weather for motormen, hand-
rails to stairs, inclosing hoist-shafts, automatic doors to ele-
vators, automatic shifters for throwing off belts and pulleys,
fire-escapes on buildings, water supplies in tenement houses,
are examples of this class and kind of legislation, which have
been pronounced valid by the courts.

In *People* v. *Smith,* 108 Mich. 527,[1] it is well said: "The
trouble with these cases arises over the inability of the courts
to fix a rigid rule by which the validity of such laws may be
tested. Each law of the kind involves the questions,—1. Is
there a threatened danger? 2. Does the regulation invade
a constitutional right? 3. Is the regulation reasonable?"
It is no longer in dispute that these laws may be and are
upheld as proper exercise of the police powers, when they
affect not the health of the community generally, but the
health or welfare of operatives employed in any given voca-
tion. The law is not to be condemned as special legislation
because it does not affect all the people, provided it affects
the welfare of a portion of the community, or of any indefi-
nite number similarly situated. Therefore, the power of the

---

[1] 62 Am. St. Rep. 715.

legislature by general law to provide for the proper sanitation of factories, foundries, mills, and the like, does not call for discussion. It is no invasion of the right of the employer freely to contract with his employee, to provide by general law that all employers shall furnish a reasonably safe place and reasonably wholesome surroundings for their employees. The difficulty with the present law, however, is, that it does not so provide, but that it is an attempt to confer upon a single person the right arbitrarily to determine not only that the sanitary condition of a workshop or factory is not reasonably good, but to say whether, even if reasonably good, in his judgment, its condition could be improved by the use of such appliances as he may designate, and then to make a penal offense of the failure to install such appliances. "The very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." (*Yick Wo* v. *Hopkins,* 118 U. S. 356.) Under the law here in question, it matters not how unwholesome, how dangerous, how unsanitary the condition of any factory or workshop may be, the proprietor is guilty of no offense until the commissioner of the bureau of labor statistics has required him to use appliances which the commissioner himself shall designate and he has refused so to do. Nor does it matter, if the condition of such a workshop be reasonably wholesome for the uses of the operatives, if "dust, filaments, or injurious gases" are "liable to be inhaled" (and it is here the mere *liability,* and not the *fact,* of inhalation which invites the action of the commissioner), and if, in the opinion of the commissioner, such liability to inhalation could "to a great extent" be prevented, he may designate and prescribe the kind of appliance which, in his judgment, is suitable for such purpose, and it must be employed.

But the judgment of the commissioner is not only the determinative factor in the proposition as to whether or not the condition of the factory may be improved "to a great extent," but under this law it is absolutely conclusive and binding upon the question of the appliances to be used, and thus it may result, as to three factories similarly situated, which as to sanitation or the danger from inhalation are in

precisely the same condition, that the proprietor of one may be guilty of no offense, because he has not been notified by the commissioner to adopt any appliance, the proprietor of the second may be called upon to put into use some appliance at a trifling cost, while the proprietor of the third may have imposed upon him an expense for apparatus amounting to thousands of dollars. In short, arbitrarily and within the declaration, not of the legislature, but of the commissioner, no burden whatever may be imposed upon one institution, while the other, in obedience to this law, may be subjected to a most onerous and even destructive expense. The legislature, as we have said, may require the owners of factories and workshops to put their buildings in proper condition as to sanitation, may require them to provide reasonable safeguards against danger for the operatives, but it may not leave the question as to whether and how these things shall be done or not done to the arbitrary disposition of any individual. By respondent reliance is placed on the case of *Taylor* v. *Hughes,* 62 Cal. 38. In that case section 637 of the Penal Code was under review. It provides that every owner of a dam or other obstruction in any running water of this state who, after being ordered and notified by the fish commissioners to construct a fish-ladder, or to repair a fish-ladder already constructed on such dam or other obstruction, according to the plans of the fish commissioners, fails to construct or repair such fish-ladder within thirty days after such notice is guilty of a misdemeanor. The application was for a writ of review, in which was set forth the complaint charging petitioner Taylor with a violation of this statute, and his conviction thereunder. The decision of this court, embraced in a single sentence, was to the effect that the application did not present grounds for the issuance of the writ. The distinction, however, between that case and the case at bar is broad. The running waters of the state of California are public property. One who obstructs them obstructs them under license or permission from the state, but only upon such conditions as to their use as the state may impose. It is therefore permissible for the state to impose such conditions upon that use as it may see fit, and in this case the requirement was that the person so obstructing the water should build an appliance to permit the free running of the fish up the stream. Here was no

interference with private property; here was merely a condition imposed by the state upon a private individual as to his use of property, the title to which, and the right of fishery in which, remained in the public. The same broad distinction exists between the case at bar and that of *Health Department* v. *Rector*, 145 N. Y. 32,[1] also relied upon by respondent. In the latter case, section 663 of the Consolidation Act of the city of New York required all tenement houses to be supplied with sufficient water on each floor, at one or more places, in sufficient quantity, by the owners, whenever they were directed so to do by the board of health, making it a misdemeanor to fail to comply with the directions of the board. Here the only requirement was that a sufficient quantity of water should be supplied on each floor of the tenement building. To answer this law it was necessary only to show that a sufficient quantity of water was supplied for the health and convenience of the tenants. The direction of the board of health, or its determination that the supply was insufficient, was not conclusive; for, as the court said in sustaining the validity of the law, "The citizen cannot under this act be punished in any way, nor can any penalty be recovered from him for an alleged non-compliance with any of its provisions or with any order of the board of health, without a trial. The punishment or penalty provided for in section 665 cannot be enforced without a trial under due process of law, and upon such trial he has an opportunity to show whatever facts would constitute a defense to the charge."

The manifest objection to this law is, that upon the commissioner has been imposed not the duty to enforce a law of the legislature, but the power to make a law for the individual, and to enforce such rules of conduct as he may prescribe. It is thus arbitrary, special legislation, and violative of the constitution.

For the foregoing reasons the police court is directed to annul the proceedings touching the trial, conviction, and judgment against petitioner herein.

[1] 45 Am. St. Rep. 579.