393 Mass. 693 (1985)
473 N.E.2d 673
TOWN OF LEXINGTON & another[1]
vs.
COMMISSIONER OF EDUCATION & another[2] (and a companion case[3]).
Supreme Judicial Court of Massachusetts, Suffolk.
November 7, 1984.
January 21, 1985.
Present: HENNESSEY, C.J., LIACOS, ABRAMS, & LYNCH, JJ.
Laurie S. Gill (Jeffrey Swope with her) for the town of Lexington & another.
Ouida C.M. Young, Assistant City Solicitor, for the city of Newton & another.
*694 Carolyn V. Wood, Assistant Attorney General, for the Commissioner of Education & another.
ABRAMS, J.
At issue is whether an act mandating increased busing for private school students is subject to G.L.c. 29, § 27C, the "local mandate" provision of St. 1980, c. 580 (Proposition 2 1/2). In 1983, the Legislature amended G.L.c. 76, § 1, to require that "[e]ach school committee shall provide transportation for any pupil attending ... an approved private school within the boundaries of the school district, provided, however, that the distance between said pupil's residence and the private school said pupil attends exceeds two miles or such other minimum distance as may be established by the school committee for transportation of public school students." St. 1983, c. 663, § 1 (Chapter 663).[4] Notwithstanding the "local mandate" provision of Proposition 2 1/2, see infra at 696-698, the Legislature made no appropriations in the same session to cover the additional costs mandated by Chapter 663.
Chapter 663 took effect on January 1, 1984. St. 1983, c. 663, § 3. Lexington decided not to bus private school students after the enactment of Chapter 663: It estimated the cost of providing Chapter 663 services at $21,750 for February through June, 1984, and $51,000 for the 1984-1985 school year. Newton, pursuant to Chapter 663, instituted transportation of an additional 420 private school students at a cost of $64,616 for the second semester of 1983-1984 and an estimated cost of $220,000 for services in 1984-1985.[5]
Lexington and the school committee of Lexington (Lexington) sought a declaratory judgment, G.L.c. 231A, in *695 the Supreme Judicial Court for Suffolk County that Chapter 663 was ineffective to require Lexington to furnish such transportation. Newton and the school committee of Newton (Newton) thereafter filed a similar action, and the single justice allowed a motion to consolidate. All parties filed motions for summary judgment. The single justice allowed the parties' joint motion to reserve and report the consolidated cases without decision for determination by the full court. The core of the dispute is whether Chapter 663 is within the scope of G.L.c. 29, § 27C, and, if it is, whether Chapter 663 was enacted in compliance with that section. We conclude that, because there was no specific appropriation at the time Chapter 663 was enacted, there is no obligation on Lexington and Newton to provide private school students with transportation services beyond those required by G.L.c. 76, § 1, prior to the enactment of Chapter 663.
1. Statutory background. The plaintiff's claim for declaratory relief involves three separate but interrelated statutory provisions: G.L.c. 29, § 27C; G.L.c. 76, § 1, as amended through St. 1983, c. 663; and G.L.c. 71, § 7A. We examine each in turn. The "local mandate" provision of Proposition 2 1/2 provides in relevant part: "Notwithstanding any provision of any special or general law to the contrary: (a) Any law taking effect on or after January first, nineteen hundred and eighty-one, imposing any direct service or cost obligation upon any city or town shall be effective in any city or town only if such law is accepted by vote or by the appropriation of money for such purposes, in the case of a city by the city council in accordance with its charter, and in the case of a town by a town meeting, unless the general court, at the same session in which such law is enacted, provides, by general law and by appropriation, for the assumption by the commonwealth of such cost, exclusive of incidental local administration expenses and unless the general court provides by appropriation in each successive year for such assumption." G.L.c. 29, § 27C, as amended by St. 1981, c. 782, § 4. Among the concerns thus embraced by Proposition 21/2 were those of "freeing cities and towns from expenditures mandated by State law" and of "preventing *696 the involuntary imposition on cities and towns of certain direct service or cost obligations resulting from statutes and administrative rules or regulations." Massachusetts Teachers Ass'n v. Secretary of the Commonwealth, 384 Mass. 209, 216 (1981).
The relevant provision of G.L.c. 76, § 1, was enacted in 1950. Its thrust was "to afford private school students the same transportation as public school students." Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 337 (1982). Prior to Chapter 663, G.L.c. 76, § 1, required "that if the distance between a private school student's residence and the public school he is entitled to attend exceeds two miles, such child [was] to be afforded transportation to his private school up to the distance from his residence to the public school he is entitled to attend." G.L.c. 76, § 1, as amended through St. 1972, c. 766, § 12. Chapter 663, purporting to extend the transportation obligations of the cities and towns, followed on the heels of the Attorney Gen. v. School Comm. of Essex decision.
Last, G.L.c. 71, § 7A, sets forth the general scheme by which towns receive retroactive State reimbursement for expenses incurred in pupil transportation. The amount of reimbursement per pupil for transportation to private schools may not exceed the average per pupil cost for transportation to public schools. Such reimbursement is further limited to costs in excess of $5 per year per pupil and is subject to appropriation of funds by the Legislature as well as to the approval of the Commissioner of Education (Commissioner).[6] On the basis of these several statutory provisions, we address the arguments of the parties.
2. Is Chapter 663 a "local mandate" within the scope of G.L.c. 29, § 27C? The parties stipulate that Chapter 663 "imposes a direct service or cost obligation upon Lexington and Newton." The Commissioner and the Board of Education contend, however, that Chapter 663 is nonetheless immune from *697 the requirements set forth in G.L.c. 29, § 27C. The defendants maintain that either: (1) "[t]he Legislature was not imposing a `new' local mandate in enacting Chapter 663" and thus G.L.c. 29, § 27C, is inapposite; or (2) Chapter 663 was a "rule or regulation enacted or promulgated as a direct result of" a decision of this court and is thus an exception within G.L.c. 29, § 27C (g); or (3) the Legislature intended that Chapter 663 supersede the requirements of G.L.c. 29, § 27C. We do not agree.
First, the defendants' contention that Chapter 663 simply "restored the status quo" by reinstating rights in existence when Proposition 2 1/2 was passed is plainly wrong. Prior to Chapter 663, private school students had no right to busing beyond the distance to the nearest public school. Attorney Gen. v. School Comm. of Essex, supra at 337. Chapter 663 was, therefore, "a new law changing existing law," Cambridge v. Boston, 130 Mass. 357, 360 (1881), and thus lies within the purview of G.L.c. 29, § 27C.
Second, we agree that G.L.c. 29, § 27C (g), exempts from the requirements of G.L.c. 29, § 27C (a), "any costs to cities and towns ... resulting from a decision of any court of competent jurisdiction, or to any law, rule or regulation enacted or promulgated as a direct result of such a decision." The defendants argue that Chapter 663 was enacted as a "direct result" of School Comm. of Essex and is thus exempt from the "local mandate" requirements. However, the School Comm. of Essex decision did not impose costs on the cities and towns. It merely set forth the extent of the statutory requirement for busing of private school students. If anything, the School Comm. of Essex decision limited the costs required to be expended by cities and towns for the busing of private school students.
The Legislature, in enacting G.L.c. 29, § 27C (g), exempted from the constraints of § 27C (a) any mandated costs or services which were not initiated by the Legislature and over which it has no control. Thus, the § 27C (g) exception applies to a "law, rule or regulation enacted or promulgated" which in implementing a court decision imposes costs on cities and *698 towns. Because the increased costs mandated by Chapter 663 were not required by the School Comm. of Essex decision, Chapter 663 is not a "direct result" of that decision within the meaning of the statute.
Third, the defendants propose that Chapter 663 escapes Proposition 2 1/2 because "if a general and a specific statute cannot be reconciled, the general statute must yield to the specific statute, particularly where the specific statute was enacted after the general." See Pereira v. New England LNG Co., 364 Mass. 109, 118-119 (1973). Reliance on that rule of statutory construction would negate the "local mandate" provision of Proposition 2 1/2, the dictates of which pertain "[n]otwithstanding any provision of any special or general law to the contrary" to "[a]ny law imposing any direct service or cost obligation upon any city or town" (emphasis added). G.L.c. 29, § 27C. Nor is there any support for the defendants' alternative argument that the Legislature impliedly repealed G.L.c. 29, § 27C, with respect to Chapter 663. As the defendants themselves concede, Chapter 663 "does not indicate any express amendment or repeal of section 27C, and indeed repeal by implication is not favored." See Emerson College v. Boston, ante 303, 306 (1984). See also American Grain Prod. Processing Inst. v. Department of Pub. Health, 392 Mass. 309, 322 (1984); Commonwealth v. Graham, 388 Mass. 115, 125 (1983). We conclude that Chapter 663, because it is a "law taking effect on or after January first, nineteen hundred and eighty-one, imposing [a] direct service or cost obligation upon" cities and towns, is subject to G.L.c. 29, § 27C (a).
3. Did the Legislature enact Chapter 663 in compliance with the requirements of G.L.c. 29, § 27C (a)? Under G.L.c. 29, § 27C (a), a law mandating costs for a city or town must be accompanied, "at the same session in which such law is enacted... by general law and by appropriation for the assumption by the commonwealth of such cost" (emphasis added).[7] Further, the law is ineffective "unless the general court *699 provides by appropriation in each successive year for such assumption." Id. The plaintiffs assert that these requirements were not met in the case of Chapter 663. We agree.
The insistence, in G.L.c. 29, § 27C (a), on "same session" appropriation to be followed by appropriations "in each successive year" means that the Legislature envisioned a scheme wherein cities and towns would be reimbursed in advance  or, at least, contemporaneously  for costs incurred pursuant to the mandate. In any year in which the Legislature declines to anticipate those costs through a specific appropriation, the mandate lapses. This scheme most convincingly realizes "the requirement that the Commonwealth assume the cost, at least, of any new law or regulation imposing any direct service or cost obligation on any city or town without its consent." Massachusetts Teachers Ass'n v. Secretary of the Commonwealth, 384 Mass. 209, 221 (1981).
The parties agree that St. 1983, c. 663, § 1, is a "general law" mandating costs on the cities and towns and that there was no "same session" special appropriation by the Legislature to sustain the newly-mandated financial burden. Chapter 663, §§ 2 and 4,[8] simply outline a method by which reimbursement *700 may be sought by cities and towns after the costs have been incurred, but do not appropriate any funds.[9]
Nor does G.L.c. 71, § 7A, pass muster as a "same session" appropriation in keeping with G.L.c. 29, § 27C (a). First, G.L.c. 71, § 7A, reimbursement to cities and towns is made in the fiscal year after the costs are incurred. Second, such reimbursement is based on a consideration of all transportation expenditures and is not specifically targeted to assumption of Chapter 663 costs. Third, G.L.c. 71, § 7A, payments are "subject to appropriation"; in other words, while G.L.c. 71, § 7A, may authorize reimbursement of Chapter 663 costs, it, in itself, does not effectuate such payment.[10]
The defendants in fact concede that "[d]uring the session in which it enacted St. 1983, c. 663, the General Court did not appropriate any money to cover the costs incurred in providing *701 transportation to private school pupils in accordance with Chapter 663." The defendants maintain that, because Chapter 663 did not impose any obligation until 1984, legislative appropriation in the 1984 session should satisfy G.L.c. 29, § 27C (a). See St. 1984, c. 188, item XXXX-XXXX (supplemental appropriation of $131,117 to make payments pursuant to § 2 of Chapter 663 for costs incurred in 1983-1984 school year); St. 1984, c. 234, item XXXX-XXXX (appropriation of $53,733,756 for reimbursement of cities and towns for fiscal 1984 expenditures for transportation of pupils pursuant to several statutory provisions, including G.L.c. 71, § 7A). The short answer is that the "plain meaning" of G.L.c. 29, § 27C (a), is that funding be provided at the same time that a mandate is imposed on cities and towns.
Finally, the defendants maintain that the "same session" appropriation requirement of G.L.c. 29, § 27C (a), is fully met by the annual general appropriations bill containing additional unrestricted financial assistance to cities and towns. Such an approach would render the "local mandate" provision of Proposition 2 1/2 meaningless, for it would always be possible to attribute undesignated increases in State aid to the local mandate being challenged.
Requiring the specific allocation of funds for each mandated service best effectuates the fiscal protection of local government that Proposition 2 1/2 was designed to achieve. The Legislature is free to decrease unrestricted local aid or to use those funds specifically to implement Chapter 663 or other legislatively mandated costs. That is a legislative, not an agency, determination. Funds not directed by the Legislature to a specific program are discretionary and may be used by local authorities for any municipal purpose.
We hold that, because the Legislature did not assume the costs of Chapter 663 "by general law and by appropriation" in the 1983 session, the plaintiffs are not obligated to meet the additional transportation costs.[11] They, of course, remain free *702 to accept Chapter 663 of their own accord, as provided in G.L.c. 29, § 27C (a), and to seek reimbursement under G.L.c. 71, § 7A. The case is remanded to the county court for entry of a judgment that Lexington and Newton are not required to provide private school students with transportation services beyond those required by G.L.c. 76, § 1, prior to the enactment of Chapter 663. See Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 337 (1982).
So ordered.
NOTES
[1] The school committee of Lexington.
[2] The Board of Education.
[3] The companion case is by the city of Newton and its school committee against the Commissioner of Education and the Board of Education.
[4] General Laws c. 76, § 1, as amended through St. 1972, c. 766, § 12, provided that: "Pupils who, in the fulfillment of the compulsory attendance requirements of this section, attend private schools of elementary and high school grades so approved shall be entitled to the same rights and privileges as to transportation to and from school as are provided by law for pupils of public schools and shall not be denied such transportation because their attendance is in a school which is conducted under religious auspices or includes religious instruction in its curriculum, nor because pupils of the public schools in a particular city or town are not actually receiving such transportation."
[5] The parties have stipulated to all relevant facts.
[6] Pursuant to G.L.c. 71, § 7A, in early 1984 Lexington received 55% of its total transportation expenditures for the 1982-1983 school year; Newton received 61.9% of its total expenditures for the same period.
[7] It is stipulated that neither Lexington nor Newton has "accepted St. 1983, c. 663, either by vote or by the appropriation of money for such purposes as provided in G.L.c. 29, § 27C (a)."
[8] Chapter 663, §§ 2 and 4, provide in relevant part:

"Section 2. Any school committee which under the provisions of this act is obligated to provide transportation services to nonpublic school pupils who were not receiving such services during the period of the nineteen hundred and eighty-three and nineteen hundred and eighty-four school year prior to the effective date of this act shall submit to the commissioner of education, as soon as possible after January first, nineteen hundred and eighty-four a proposed expenditure plan for additional transportation costs incurred during the nineteen hundred and eighty-three to nineteen hundred and eighty-four school year as a result of this act....
"The commissioner of education shall approve the payment of state funds for the costs of such additional transportation services.... Such funds shall also be deducted from the state aid received by the city, town, or regional school district under the provisions of sections seven A and sixteen C of chapter seventy-one of the General Laws during fiscal year nineteen hundred and eighty-five.
"....
"Section 4. Notwithstanding the provisions of said section seven A of said chapter seventy-one of the General Laws, the commonwealth shall, for fiscal year nineteen hundred and eighty-four and subject to appropriation, reimburse the costs incurred in the transportation of nonpublic school pupils whose transportation to approved private schools would not have been required but for the passage of this act; provided, however, that the amount of such reimbursement shall not exceed the average per pupil cost incurred by the city, town, or regional school district in the transportation of pupils to public schools; and, provided further, that the commissioner of education may exceed such reimbursement limit for any city or town or regional school district that demonstrates a unique and disproportionate municipal financial burden as a result of this act. The commissioner of education may, upon finding that such a unique and disproportionate municipal financial burden exists, approve the payment of up to one hundred per cent of the cost of such additional transportation services."
[9] Chapter 663, § 2, merely loans funds from fiscal year 1985 State aid to cities and towns to cover additional transportation costs. Section 4 permits the Commissioner, based on his discerning "a unique and disproportionate municipal financial burden," to reimburse Chapter 663 costs up to 100 percent. Those costs, however, are still "subject to appropriation" by the terms of § 4. See note 8, supra.
[10] Lexington points out that even if G.L.c. 71, § 7A, could be viewed under G.L.c. 29, § 27C (a), as a satisfactory vehicle for reimbursement, "the costs eligible for reimbursement under § 7A would be less than ... actual [Chapter 663] costs, because the per pupil cost for private school students would be limited by the average cost for public school students." We do not reach this argument. We note, however, that in the event of a deficiency in reimbursement for local mandate costs, "[t]he superior court ... shall order that the said city or town be exempt from [a] general or special [local mandate] law...." G.L.c. 29, § 27C (e).
[11] It is stipulated that "[a]s of September 10, 1984, the General Court had not appropriated any funds to cover the costs imposed by St. 1983, c. 663, during the 1984-85 school year."