[Civ. No. 24357. Third Dist. Jan. 31, 1986.]

COUNTY OF CONTRA COSTA et al., Plaintiffs and Respondents, v. THE STATE OF CALIFORNIA, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Carol Hunter and Jeffrey J. Fuller, Deputy Attorneys General, for Defendant and Appellant.

Thomas M. Cecil, Richard A. Elbrecht, John C. Lamb, Mary-Alice Coleman, Altshuler & Berzon, Fred H. Altshuler, Marsha S. Berzon, Beeson, Tayer & Silbert, Franklin Silver, Kenneth Absolam, Laurence Gold, Remy & Thomas and Roger Dickinson as Amici Curiae on behalf of Defendant and Appellant.

Douglas J. Maloney, County Counsel, for Plaintiffs and Respondents.

James P. Jackson, City Attorney, and William P. Carnazzo, Deputy City Attorney, as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

**SPARKS, J.**—In this declaratory relief action the Superior Court of Sacramento County entered a judgment declaring that 14 bills enacted during the 1980-1981 legislative session were void, and that the challenged bills enacted in 1975 and in 1978 have become unenforceable. The court reasoned that the state had failed to provide a subvention for reimbursement of the costs imposed on local governments as is required by California Constitution, article XIII B, section 6. The defendant State of California appeals contending that the plaintiffs failed to exhaust their administrative remedies, and that the contested statutes do not constitute reimbursable mandates under the constitution. We conclude that the state's position on exhaustion is the correct one and therefore reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

As we noted in *City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182 [203 Cal.Rptr. 258], "[t]he question of reimbursement had its genesis in the 'Property Tax Relief Act of 1972.' (Stats. 1972, ch. 1406, § 1, p. 2931.) That act, generally known as 'SB 90,' provided for a system of limitations on local governments' power to levy property taxes, with the concomitant requirement of reimbursement to such local governments for costs mandated upon them by the state in the form of increased levels of services or programs. . . . [¶] On November 6, 1979, California voters determined to make a limitation-reimbursement system similar to 'SB 90' a part of the Constitution. By initiative measure at the special statewide elec-

tion on that date, the voters enacted Proposition 4, thereby adding article XIII B to the California Constitution . . . . The so-called 'Spirit of 13' initiative provided for limitations on the ability of all California governmental entities to appropriate funds for expenditures. (Cal. Const., art. XIII B, §§ 1, 8, subds. (a), (b).)" (*Id.,* at p. 188.)

Fiscal relief to local governments was provided in the provision we are concerned with in this case, section 6 of article XIII B. Section 6 provides: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates: [¶] (a) Legislative mandates requested by the local agency affected; [¶] (b) Legislation defining a new crime or changing an existing definition of a crime; or [¶] (c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975." Article XIII B became effective on July 1, 1980. (Art. XIII B, § 10.)[1]

This action was commenced on January 11, 1982, when 38 counties and the County Supervisors Association of California (Counties) filed a complaint for declaratory relief against the State of California. The Counties set forth a list of 20 bills enacted in the 1980-1981 legislative session which they contend establish reimbursable mandates but for which no subvention of funds has been provided. They also set forth three bills enacted after January 1, 1975, but before the effective date of article XIII B, which they allege establish reimbursable mandates but for which no subvention of funds has been provided. The Counties sought a declaration that the challenged statutory enactments are invalid, unconstitutional, and/or unenforceable. The state, represented by the Attorney General, answered the complaint by denying that the challenged bills were invalid or unconstitutional, and asserting as an affirmative defense that the Counties had failed to exhaust their administrative remedies.

Before trial the Counties withdrew their challenge to four of the bills enacted in the 1980-1981 legislative session. A court trial was held with

---

[1]After the adoption of article XIII B, section 6, the Legislature in 1980 amended Revenue and Taxation Code sections 2207 and 2231, and expanded the definition of "costs mandated by the State" by including certain specified statutes enacted after January 1, 1973. (Stats. 1980, ch. 1256, § 5, p. 4248.) In *County of Los Angeles* v. *State of California* (1984) 153 Cal.App.3d 568, 573 [200 Cal.Rptr. 394], the court concluded that "this reaffirmance constituted the exercise of the Legislative discretion authorized by article XIII B, section 6, subdivision (c), of the California Constitution [to provide subvention of funds for mandates enacted prior to January 1, 1975]."

regard to 16 bills enacted in that session, and 3 bills enacted in 1975, 1976, and 1978. The trial court issued a tentative decision holding that the Counties had failed to exhaust their administrative remedies by failing to submit their claims to the Board of Control as provided for in Revenue and Taxation Code sections 2231 and 2250 and following. The court also indicated an intent to hold that article XIII B does not apply to bills enacted before its effective date.

The Counties moved for a new trial. In support of their motion they submitted a written statement of the Board of Control concerning a claim of the Pajaro Valley Unified School District for reimbursement for costs mandated by a state regulation (Cal. Admin. Code, tit. 5, §§ 90-101, relating to voluntary desegregation). The board determined that the regulation did not impose reimbursable state-mandated costs. In doing so the board stated that its authority to review claims for reimbursement was limited to statutory provisions for reimbursement under provisions in the Revenue and Taxation Code and did not extend to claims under the Constitution.[2] This decision was submitted in support of Counties' argument that they had no administrative remedy for claims arising under the Constitution. A new trial was granted.

Upon a new trial the court held that the Board of Control does not have the authority or jurisdiction to determine whether a statute contains a reimbursable mandate under the Constitution. The court further found that even if the board had such authority it would have been futile for the Counties to have exhausted their administrative remedies. The court held that 14 bills enacted during the 1980-1981 legislative session contained reimbursable mandates and since the Legislature has not provided a subvention of funds the court found those acts to be void. With respect to acts enacted in 1975 and in 1978, the court held that the acts were valid when enacted but that since the Legislature had failed to provide a subvention of funds after the effective date of article XIII B, the acts had become unenforceable.

Judgment was entered holding the following legislative enactments to be void: (1) Statutes of 1981, chapter 1141, relating to taxation; (2) Statutes of 1981, chapter 617, relating to fire inspection records; (3) Statutes of 1981, chapter 618, relating to juvenile courts; (4) Statutes of 1981, chapter

---

[2]That piece of evidence added nothing to the dispute. First of all, the decision of the Board of Control was not rendered until May 26, 1983, more than a year and five months *after* this lawsuit was filed. It hardly justifies the failure of the Counties to seek their administrative remedy before they filed this suit. Secondly, the board only "determined that its authority to review alleged mandates was limited to the authority delineated in the Revenue and Taxation Code, Section 2201 et seq." The Counties have failed to show how that determination precluded the board from granting relief in this case.

1111, relating to parole; (5) Statutes of 1981, chapter 846, relating to real property; (6) Statutes of 1981, chapter 1088, relating to the California Debt Advisory Commission; (7) Statutes of 1981, chapter 962, relating to environmental quality; (8) Statutes of 1981, chapter 332, relating to juvenile court law; (9) Statutes of 1981, chapter 990, relating to developmental disabilities; (10) Statutes of 1981, chapter 612, relating to local agency employer-employee relations; (11) Statutes of 1981, chapter 958, relating to small claims court; (12) Statutes of 1981, chapter 875, relating to minors; (13) Statutes of 1981, chapter 866, relating to public contracts; and (14) Statutes of 1981, chapter 876, relating to building standards. The judgment also declared the following legislative enactments to be unenforceable: (1) Statutes of 1975, chapter 1275, relating to acquisition of property for public use; and (2) Statutes of 1978, chapter 1146, relating to animals.

DISCUSSION

I

As we noted in *City of Sacramento,* the concept of reimbursement of local governmental entities for state mandated costs did not begin with the enactment of article XIII B to the Constitution. In the Property Tax Relief Act of 1972 the Legislature had earlier provided for limitations on local governments' power to levy property taxes, with a requirement of reimbursement to such local governments for costs mandated by the state in the form of increased levels of services or programs. This statutory limitation-reimbursement scheme is contained in Revenue and Taxation Code section 2201 et seq. (Stats. 1973, ch. 358, § 3, p. 779.)[3] Section 2207 provides: " 'Costs mandated by the state' means any increased costs which a local agency is required to incur as a result of the following: [¶] (a) Any law enacted after January 1, 1973, which mandates a new program or an increased level of service of an existing program; [¶] (b) Any executive order issued after January 1, 1973, which mandates a new program. [¶] (c) Any executive order issued after January 1, 1973, which (i) implements or interprets a state statute and (ii), by such implementation or interpretation, increases program levels above the levels required prior to January 1, 1973. [¶] (d) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which implements or interprets a federal statute or regulation and, by such implementation or interpretation, increases program or service levels above the levels required by such federal statute or regulation. [¶] (e) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which implements or interprets a statute or amend-

---

[3]All further section references are to the Revenue and Taxation Code unless otherwise indicated.

ment adopted or enacted pursuant to the approval of a statewide ballot measure by the voters and, by such implementation or interpretation, increases program or service levels above the levels required by such ballot measure. [¶] (f) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which (i) removes an option previously available to local agencies and thereby increases program or service levels or (ii) prohibits a specific activity which results in the local agencies using a more costly alternative to provide a mandated program or service. [¶] (g) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which requires that an existing program or service be provided in a shorter time period and thereby increases the costs of the program or service. [¶] (h) Any statute enacted after January 1, 1973, or executive order issued after January 1, 1973, which adds new requirements to an existing optional program or service and thereby increases the cost of such program or service if the local agencies have no reasonable alternatives other than to continue the optional program.''

Section 2231, subdivision (a) provides that the state shall reimburse local agencies for all costs mandated by the state as defined in section 2207.[4] Subdivision (b) of section 2231 provides that the reimbursement for the initial fiscal year shall be provided by an appropriation in the statute mandating the costs or, in the case of an executive order, by a bill appropriating the funds which must accompany the order or alternatively by a provision in the Budget Bill for the following fiscal year. In the following fiscal years the costs are to be included in the State Budget and in the Budget Bill. The State Budget and the Budget Bill shall also include appropriations for reimbursement of claims which have been awarded pursuant to section 2253, subdivisions (b), (c), and (d). The procedure for the submission and payment of claims by local governments is also set forth in section 2231.

Section 2240 and the sections following it set forth the procedure for determining and appropriating funds for the reimbursement of local governments. Essentially, the Legislative Counsel is to make the initial determination whether a bill will require reimbursement. (§ 2241.) If it will then the Department of Finance is to estimate the amount of reimbursement which will be required. (§§ 2242-2243.) In every subsequent fiscal year the State Budget and the Budget Bill shall contain appropriations for reimbursement of such costs. (§ 2245.) The Department of Finance and the Legislative Analyst are to make yearly reports to the Legislature with respect to

---

[4]Section 2231 also provides for reimbursement to school districts for costs mandated by the state as defined in section 2207.5. We are not here concerned with the claims of any school district so we shall restrict our discussion to the provisions applicable to reimbursement of local governments.

unfunded statutes to aid in determining whether reimbursement is in fact required and whether the mandate should be repealed. (§§ 2246, 2246.1.)

Section 2250 and those following it provide a hearing procedure for the determination of claims by local governments. The State Board of Control is required to hear and determine such claims. (§ 2250.) For purposes of such hearings the board consists of the members of the Board of Control provided for in part 4 (commencing with § 13900) of division 3 of title 2 of the Government Code, together with two local government officials appointed by the Governor. (§ 2251.) The board was required to adopt procedures for receiving and hearing such claims. (§ 2252.) The first claim filed with respect to a statute or regulation is considered a "test claim" or a "claim of first impression." (§ 2218, subd. (a).) The procedure requires an evidentiary hearing where the claimant, the Department of Finance, and any affected department or agency can present evidence. (§ 2252.) If the board determines that costs are mandated, then it must adopt parameters and guidelines for the reimbursement of such claims. (§ 2253.2.) The claimant or the state is entitled to commence an action in administrative mandate pursuant to Code of Civil Procedure section 1094.5 to set aside a decision of the board on the grounds that the board's decision is not supported by substantial evidence. (§ 2253.5.)

At least twice each calendar year the board is required to report to the Legislature on the number of mandates it has found and the estimated statewide costs of these mandates. (§ 2255, subd. (a).) In addition to the estimate of the statewide costs for each mandate, the report must also contain the reasons for recommending reimbursement. (§ 2255, subd. (a).) Immediately upon receipt of the report a local government claims bill shall be introduced in the Legislature which, when introduced, must contain an appropriation sufficient to pay for the estimated costs of the mandates. (§ 2255, subd. (a).) In the event the Legislature deletes funding for a mandate from the local government claims bill, then it may take one of the following courses of action: (1) include a finding that the legislation or regulation does not contain a mandate; (2) include a finding that the mandate is not reimbursable; (3) find that a regulation contains a mandate and direct that the Office of Administrative Law repeal the regulation; (4) include a finding that the legislation or regulation contains a reimbursable mandate and direct that the legislation or regulation not be enforced against local entities until funds become available; (5) include a finding that the Legislature cannot determine whether there is a mandate and direct that the legislation or regulation shall remain in effect and be enforceable unless a court determines that the legislation or regulation contains a reimbursable mandate in which case the effectiveness of the legislation or regulation shall be suspended and it shall not be enforced against a local entity until funding becomes available; or

(6) include a finding that the Legislature cannot determine whether there is a reimbursable mandate and that the legislation or regulation shall be suspended and shall not be enforced against a local entity until a court determines whether there is a reimbursable mandate. (§ 2255, subd. (b).) If the Legislature deletes funding for a mandate from a local government claims bill but does not follow one of the above courses of action or if a local entity believes that the action is not consistent with article XIII B of the Constitution, then the local entity may commence a declaratory relief action in the Superior Court of the County of Sacramento to declare the mandate void and enjoin its enforcement. (§ 2255, subd. (c).)[5]

Effective January 1, 1985, the Legislature has established a new commission to consider and determine claims based upon state mandates. This is known as the Commission on State Mandates and it consists of the Controller, the Treasurer, the Director of Finance, the Director of the Office of Planning and Research, and a public member with experience in public finance, appointed by the Governor and approved by the Senate. (Gov. Code, § 17525.) "Costs mandated by the state" are defined as "any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, or any executive order implementing any statute enacted on or after January 1, 1975, which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIII B of the California Constitution." (Gov. Code, § 17514.) The procedures before the commission are similar to those which were followed before the Board of Control. (Gov. Code, § 17500 et seq.) Any claims which had not been included in a local government claims bill prior to January 1, 1985, were to be transferred to and considered by the commission. (Gov. Code, § 17630; § 2239.)[6]

---

[5]At the time this litigation commenced section 2255 did not contain any alternative for the Legislature to appropriate funds to pay for mandates found by the board, and did not provide for a suit to declare the mandate void and enjoin its enforcement. (Subds. (b) and (c).) These provisions were added in 1982. (Stats. 1982, ch. 327, § 147, pp. 1480-1481; Stats. 1982, ch. 1638, § 7, pp. 6662-6663.)

[6]In 1984, the Legislature established a State Mandates Claims Fund. (Gov. Code, § 17614.) Claims for which the statewide cost does not exceed $500,000 are to be paid from the fund by the Controller upon certification of parameters and guidelines by the commission. (Gov. Code, § 17610.) For purposes of these claims the fund is to be continuously appropriated without regard to fiscal years. (Gov. Code, § 17614.) The Counties suggest that the Legislature attempted, by this legislation, to limit reimbursement for state mandates to those claims which are less than $500,000 statewide, a limitation which is not found in the Constitution. They are mistaken. Claims for which the statewide costs exceeds $500,000 are not precluded; rather, the appropriation for such claims must be contained in a local government claims bill rather than a continuous appropriation without regard to fiscal years. (Gov. Code, §§ 17612, subd. (a), 17614.)

The Attorney General contends that exhaustion of these administrative remedies constituted a condition precedent for resort to this judicial action for declaratory relief. We agree. ■ The doctrine of exhaustion of administrative remedies, it has been held, is not a matter of judicial discretion but is a fundamental rule of procedure. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715].) "In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Id.*, at p. 292.) When no exception applies, the exhaustion of an administrative remedy is a jurisdictional prerequisite to resort to the courts. (*Id.*, at p. 293.) The cases which so hold are legion. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, pp. 264-265; 2 Witkin, *op. cit. supra,* Jurisdiction, § 69, p. 437.) As Witkin explains it, "[t]he administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or 'cause of action' is within the special jurisdiction of the administrative tribunal, and the courts may act only to *review* the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy has been held *jurisdictional* in California." (3 Witkin, *op. cit. supra,* Actions, § 234, p. 265; italics in original.) But before the doctrine can be said to be jurisdictional it must first apply to the case at issue. ■ As the Court of Appeal explained in *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761], "the doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma. It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the administrative agency cannot grant an adequate remedy, and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be." (*Id.*, at p. 834, citations omitted; see also 4 Davis, Administrative Law Treatise (2d ed. 1983) The Exhaustion Problem, § 26:1, pp. 414-415.) Thus the jurisdictional sweep of the doctrine presupposes that none of these recognized exceptions applies. Consequently, the doctrine precludes original judicial actions only in the absence of those exceptions. The question in this case then is whether any of the exceptions apply here. As we shall explain, none does.

By the Property Tax Relief Act of 1972, the Legislature assumed a statutory obligation of reimbursing local governments for state mandated costs, including any costs incurred by the local government as the result of any law enacted after January 1, 1973, "which mandates a new program or an increased level of service of an existing program." (§§ 2207, subd. (a), 2231.) At the same time, the Legislature provided an administrative pro-

cedure with the right to judicial review by which claims that a law requires reimbursement may be made and determined. (§ 2250 et seq.; Gov. Code, § 17500 et seq.) As a statutory requirement for reimbursement the 1972 provisions were subject to amendment or repeal by the Legislature. (*County of Los Angeles* v. *State of California, supra,* 153 Cal.App.3d at p. 573.) Perhaps in recognition of its repealable and thus impermanent character, the People, by enacting article XIII B, have imposed a constitutional requirement of reimbursement. Yet nothing in article XIII B renders the statutory administrative procedure for hearing and determining claims void. That procedure remains a viable administrative remedy by which the local governments may claim reimbursement for state mandated costs.

The Counties contend that they are not required to exhaust the administrative remedy because they are asserting that the challenged acts are unconstitutional.[7] ■ However, the doctrine of exhaustion of administrative remedy applies to actions raising constitutional issues. (*Security-First Nat. Bk.* v. *County of L.A.* (1950) 35 Cal.2d 319, 321 [217 P.2d 946]; *United States* v. *Superior Court* (1941) 19 Cal.2d 189, 195 [120 P.2d 26]; *People* v. *Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 57-58 [21 Cal.Rptr. 875]; *Tushner* v. *Griesinger* (1959) 171 Cal.App.2d 599, 604-608 [341 P.2d 416]; see also 3 Witkin, *op. cit. supra,* Actions, § 236, p. 267; Reed, *Exhaustion of Administrative Remedies in California* (1968) 56 Cal.L.Rev. 1061, 1073-1074.) It is true that there is an exception when the constitutionality of the

---

[7]In contending that a failure to provide a subvention of funds renders a bill void, the Counties rely upon four cases from three other states with constitutional provisions mandating reimbursement to local governments. However, the provisions involved in those states contained markedly different language from our constitutional provision. In Missouri the provision states that "[a] new activity or service or an increase in the level . . . shall not be required by [the state] unless a state appropriation is made and disbursed . . . ." (See *State* v. *County Court of Greene County* (Mo. banc 1984) 667 S.W.2d 409, 411; *Boone County Court* v. *State* (Mo. banc 1982) 631 S.W.2d 321, 323.) In Michigan the provision states "The state is prohibited from requiring any new or expanded activities . . . without full financing . . . ." (See *Delta County* v. *Mich. Dept. of Nat. Resources* (1982) 118 Mich.App. 458 [325 N.W.2d 455, 456].) In Massachusetts the provision states that a statutory mandate "shall be effective . . . only if . . ." financing is provided by the state. (See *Town of Lexington* v. *Commissioner of Educ.* (1985) 393 Mass. 693 [473 N.E.2d 673, 675].) In those states there is no provision for any administrative remedy because the unfunded legislation is simply not effective. In contrast, the California constitutional provision requires that when the state mandates a new program or higher level of service "the state shall provide a subvention of funds to reimburse" the local government. (Art. XIII B, § 6.) The Legislature has provided an administrative remedy when the state fails to reimburse the local entity. It is only after the Legislature has deleted the reimbursement contained in the administrative agency's report and in the local government claims bill that the local agency "may file in the Superior Court of the County of Sacramento an action in declaratory relief to declare the mandate unenforceable and enjoin its enforcement." (Gov. Code, § 17612, subd. (b); see also § 2255, subd. (c), providing the mandate may be declared void and its enforcement enjoined if the Legislature deletes reimbursement from a local government claims bill funding for a mandate but does not follow one of the alternative courses of action provided for in subd. (b).)

agency itself is challenged. A litigant is not required to exhaust his administrative remedies where the challenge is to the constitutionality of the administrative agency. (*State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 251 [115 Cal.Rptr. 497, 524 P.2d 1281].) But here the Counties are not challenging the constitutionality of the State Board of Control, the Commission on State Mandates, or even the statutory scheme for hearing and determining claims; instead, they are asserting that they need not submit to that procedure because the claims they assert have roots in the Constitution. Their claim is that a provision for subventions is a constitutional condition precedent to the enactment of statutes which impose local mandates. If the subvention is not included in the statute, or at least prior to the effective date of the statute, they argue, the enactment violates section 6 of article XIII B. Thus the claim asserted in this case is that the cost mandating statutes are unconstitutional and that claim does not fall within the exception to the rule that administrative remedies must be exhausted prior to resort to the courts. (*Id.,* at pp. 249-250.)[8]

Counties emphasize that they consider article XIII B to be self executing and consequently they may disregard the statutory scheme for claiming reimbursement for state mandated costs. ▮ But the fact that a constitutional provision is self executing does not relieve a party from complying with reasonable procedures for assertion of the right. While the Legislature may not unreasonably curtail or impair a right granted by a self executing constitutional provision, it may adopt reasonable procedural requirements for assertion of the right. (*Vinnicombe* v. *State of California* (1959) 172 Cal.App.2d 54, 56 [341 P.2d 705].) For example, former article I, section 14 of the Constitution prohibited the taking or damaging of private property for public use "without just compensation having first been made to, or paid into court for, the owner." This section was self executing and under its provisions a property owner could maintain an action against a governmental entity that took or damaged his property. (*Powers Farms* v. *Consolidated*

---

[8]The Counties alleged that the Board of Control (now the Commission on State Mandates) does not have the jurisdiction to consider claims under the Constitution. The trial court agreed. In fact, an administrative agency does not have the power to declare a statute unconstitutional or unenforceable. (Cal. Const., art. III, § 3.5.) But the Board of Control (now the commission) has the power to determine whether a statute or regulation mandates a new program, or higher level of service of an existing program and whether there are any "costs" mandated by the legislation. A proceeding before the board will promote judicial efficiency by unearthing the relevant evidence and providing a record which the court may review. (See *Edgren* v. *Regents of the University of California* (1984) 158 Cal.App.3d 515, 521 [205 Cal.Rptr. 6].) It is still the rule that a party must exhaust administrative remedies even though, if unsuccessful, he intends to raise constitutional issues in a judicial proceeding. (See *Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82, 96 [143 Cal.Rptr. 441].) We note parenthetically that the interplay between the constitutional and the statutory provisions for reimbursement of counties in the context of a board proceeding is pending before the Supreme Court. (*County of Los Angeles* v. *State of California,* L.A. 32106, rev. granted Sept. 19, 1985.)

*Irr. Dist.* (1941) 19 Cal.2d 123, 126 [119 P.2d 717].) In the *Powers Farms* case the plaintiff brought an action against an irrigation district for damage to its property without first filing a verified claim with the district as required by the Irrigation District Liability Law (Stats. 1935, ch. 833, p. 2250). The plaintiff claimed that it did not have to comply with the claims statute because its action was based upon the self executing constitutional provision. The Supreme Court said: "But the fact that the cause of action is one of that kind does not exclude it from the operation of a claim statute, the terms of which are broad enough to embrace it. Although the Constitution grants the right to compensation, it does not specify the procedure by which the right may be enforced. Such procedure may be set up by statutory or charter provisions, and when so established, a failure to comply with it is deemed to be a waiver of the right to compel the payment of damages." (*Ibid.*, citations omitted.) Thus, as the high court later held in *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223], the "fact that inverse condemnation is founded directly on the California Constitution (art. I, § 14) neither excuses plaintiffs from compliance with the claims statutes, nor renders the claims statutes unconstitutional." (*Id.,* at pp. 454-455, citations omitted.) Similarly, former Government Code section 16047, which required an undertaking as a condition of bringing an action against the state, was held applicable to actions brought under former article I, section 14. (*Vinnicombe* v. *State of California, supra,* 172 Cal.App.2d at p. 56.)

■ The jurisdictional aspect of the exhaustion of remedies doctrine is based in part upon the separation of powers of the three branches of government. "The powers of state government are legislative, executive and judicial." (Cal. Const., art. III, § 3.) Under that tripartite system, the "legislative power of this State is vested in the California Legislature" (Cal. Const., art. IV, § 1); the "supreme executive power of this State is vested in the Governor" (Cal. Const., art. V, § 1); and the "judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts." (Cal. Const., art. VI, § 1.) One branch of government may not exercise the powers of another branch. "Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.)

The judicial function is to declare the law and to determine the rights of parties to controversies. (*Marin Water etc. Co.* v. *Railroad Com.* (1916) 171 Cal. 706, 711-712 [154 P. 864].) Under the separation of powers clause, the Legislature can neither exercise nor place limitations upon judicial powers. (*In re McKinney* (1968) 70 Cal.2d 8, 10 [73 Cal.Rptr. 580, 447 P.2d 972].) The legislative function is to enact laws and to appropriate funds. (See *Schaezlein* v. *Cabaniss* (1902) 135 Cal. 466, 467 [67 P. 755];

see also *Mandel* v. *Myers* (1981) 29 Cal.3d 531, 550 [174 Cal.Rptr. 841, 629 P.2d 935].) Courts, by the same constitutional restriction, cannot interfere with the legislative process. (*Santa Clara County* v. *Superior Court* (1949) 33 Cal.2d 552, 559 [203 P.2d 1]; *Johnston* v. *Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686].) And courts cannot compel legislative action. (*City Council* v. *Superior Court* (1960) 179 Cal.App.2d 389, 395 [3 Cal.Rptr. 796].)[9] ■ An administrative procedure is part of the legislative process and it has been recognized that " 'the legislative process remains incomplete' until the administrative remedy is exhausted." (*Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at p. 295, citing *Porter* v. *Investors Syndicate* (1931) 286 U.S. 461, 468 [76 L.Ed. 1226, 1230, 52 S.Ct. 617].) A judicial action before the legislative process has been completed is premature and a court is without jurisdiction until administrative remedies have been exhausted. (*Abelleira* v. *District Court of Appeal, supra.*) To hold otherwise would be to permit the courts to engage in an unwarranted interference with the legislative process. (See *Santa Clara County* v. *Superior Court, supra,* 33 Cal.2d at p. 556.) As we have recounted at length, the Legislature has provided for a procedure by which local governmental entities may present claims for reimbursement of the costs of state mandates, those claims may be determined, a subvention of funds may be provided, and the result of those proceedings may be reviewed in a judicial proceeding. Unless the Counties can establish an exception to the rule requiring the exhaustion of administrative remedies, a judicial action without exhausting those remedies must be considered premature.

■ The Counties assert, and the trial court agreed, that it would have been futile for them to have submitted their claims to the administrative process. In support of this contention the Counties presented evidence that out of 24 mandates found by the board and reported to the Legislature, only 8 had been funded in a claims bill. This evidence does not support the contention that it would be futile to submit the claims to the administrative procedure. ■ The futility exception to the requirement of exhaustion of administrative remedies is a very narrow one. "Insofar as a 'futility' exception exists, as when it can be demonstrated that an agency's decision is certain to be adverse (see *Ogo Associates* v. *Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761]), its application is very limited. Thus, exhaustion

[9]While our branches of government are coequal they are not completely independent. While the Legislature cannot exercise judicial functions or deprive the courts of judicial powers, it may regulate procedures and place reasonable restrictions upon judicial functions. (*Briggs* v. *Superior Court* (1931) 211 Cal. 619, 627 [297 P. 3], procedure for punishing contempt; *Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 443 [281 P. 1018], restrictions on the admission to the practice of law.) And while the Legislature cannot act as a "super-court," rejecting judicial decisions with which it disagrees (*Mandel* v. *Myers, supra,* 29 Cal.3d at p. 552), it may make a law to prospectively abrogate the effect of a judicial decision. (*Matter of Coburn* (1913) 165 Cal. 202, 210 [131 P. 352].)

of administrative remedy is required unless the appellant 'can *positively* state that the [administrative agency] has declared what its ruling will be in a *particular* case.' (*Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314, 318 [109 P.2d 932], italics added.)" (*George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1985) 40 Cal.3d 654, 662 [221 Cal.Rptr. 488, 710 P.2d 288]. See also *Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673, 683 [172 Cal.Rptr. 844]; *Mountain View Chamber of Commerce* v. *City of Mountain View, supra,* 77 Cal.App.3d at p. 92.) ■■ The fact that the Legislature has provided for funding of some of the mandates found by the board, albeit only a portion, precludes the Counties from establishing the futility exception.

The Counties next assert that their remedy before the board (now commission) is inadequate. We disagree. The applicable procedures provide for an evidentiary hearing and decision by the board with the right to judicial review. (§§ 2252, 2253.2, 2253.5; Gov. Code, §§ 17551, 17559.) In the event it is determined that a reimbursable mandate exists then a local government claims bill must be introduced to fund such a mandate. (§ 2255, subd. (a); Gov. Code, § 17612, subd. (a).) In the event the Legislature fails to provide an appropriation to fund the mandate then the local government agency may proceed to have a judicial declaration that the mandate is unenforceable. (§ 2255, subd. (c); Gov. Code, § 17612, subd. (b).) In that event the court will have the advantage and benefit of the evidence and record compiled in the administrative proceeding. Pursuant to this procedure the Legislature cannot escape the constitutional requirement that the state reimburse local governments for reimbursable mandates.

■■ For these reasons we conclude that the trial court erred in concluding that the Counties are not required to exhaust their administrative remedies before resorting to a judicial action with respect to reimbursable state mandates. The determination of a reimbursement claim was within the jurisdiction of the administrative agency, pursuit of the remedy would not result in irreparable harm, the agency could grant an adequate remedy, and the agency's decision was not preordained. The failure to exhaust those remedies was therefore jurisdictional. The judgment with respect to the bills enacted during the 1980-1981 legislative session must be reversed because no claims were filed with respect to those bills. For this reason we need not and do not consider whether those bills contain reimbursable state mandates or whether they pass constitutional muster.

II

With respect to the three bills enacted before 1980 the Counties assert, and the state concedes, that administrative remedies were exhausted by the

filing and determination of claims. The bills challenged for which the administrative process was completed included Statutes of 1975, chapter 1275, relating to eminent domain; Statutes of 1976, chapter 1139, relating to determinate sentencing; and Statutes of 1978, chapter 1146, relating to animals. The trial court found that the Statutes of 1976, chapter 1139, fall within an exception to article XIII B, section 6, which excepts legislation defining a new crime or legislation changing an existing definition of a crime from the reimbursement requirement. The court further determined, however, that Statutes of 1975, chapter 1275, and Statutes of 1978, chapter 1146, did contain reimbursable mandates and that they have become unenforceable due to the Legislature's failure to provide a subvention of funds. The state challenges these findings.

Statutes of 1975, chapter 1275, relating to eminent domain, requires a condemnor to pay for business goodwill when condemning property. (Code Civ. Proc., § 1263.510.) The Counties contend that the payment for business goodwill constitutes a state mandated cost for which reimbursement is required. Pursuant to a claim submitted to the Board of Control, the board agreed with Counties' contention and submitted claims for reimbursement for such expenses in a local government claims bill. The Legislature deleted the claims from the claims bill, and directed that the board shall not accept or submit to the Legislature any more claims pursuant to Statutes of 1975, chapter 1275. (Stats. 1981, ch. 1091, § 3, p. 4193.) The issue is thus now ripe for decision. (§ 2255, subd. (c).)

In resolving this question we agree with and adopt the reasoning of the Court of Appeal in *City of Merced* v. *State of California* (1984) 153 Cal.App.3d 777, at page 783 [200 Cal.Rptr. 642]. There, with respect to the same statutory provisions, the court said: "We agree that the Legislature intended for payment of goodwill to be discretionary. ▪ The above authorities reveal that whether a city or county decides to exercise eminent domain is, essentially, an option of the city or county, rather than a mandate of the state. The fundamental concept is that the city or county is not required to exercise eminent domain. If, however, the power of eminent domain is exercised, then the city will be required to pay for loss of goodwill. Thus, payment for loss of goodwill is not a state-mandated cost." For this reason the trial court erred in finding that Statutes of 1975, chapter 1275 constitutes a reimbursable mandate.[10]

---

[10]We note that we employed analogous reasoning in *City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182, at pages 196-197 [203 Cal.Rptr. 258]. There the city contended that a state law requiring public employees to be covered by the state unemployment insurance law constituted a state mandate. The state countered that it was only complying with a federal requirement, did not itself mandate the coverage, and was thus not required to reimburse the city. We noted that federal law provided financial incentives and

■ Statutes of 1978, chapter 1146, relates to the destruction of dogs and cats. The aspect of this legislation which the Counties claim constitutes a state mandate imposing costs is the amendment of Penal Code section 597w, which prohibits the use of a high-altitude decompression chamber for the destruction of dogs and cats. The Counties contend that this removes a less expensive option in destroying dogs and cats and thus constitutes a state mandated cost. The Board of Control agreed and submitted a claim for such costs to the Legislature. The Legislature, however, deleted the claim from the local government claims bill and directed the board not accept or submit further claims based upon this provision. (Stats. 1981, ch. 1091, § 3, p. 4193.)

We hold that the trial court erred in finding that Statutes of 1978, chapter 1146, constitutes a reimbursable mandate under article XIII B, section 6. The state, through its penal law, has long prohibited acts which might be described as cruelty to animals. (Pen. Code,. § 596 et seq.) The state has determined that the use of high-altitude decompression chambers to destroy dogs and cats constitutes cruelty to animals, and has made it a misdemeanor to do so. (Pen. Code, §§ 597w, 597y.) This is clearly legislation defining a new crime or changing the definition of an existing crime, and as such is expressly excluded from the operation of article XIII B, section 6, by subdivision (b) thereof.

The judgment is reversed.

Puglia, P. J., and Sims, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 23, 1986. Mosk, J., was of the opinion that the petition should be granted.

---

that it would have been politically unpalatable for the state to refuse to extend coverage to public employees, but nonetheless the decision was optional with the state. This precluded the state from asserting that it was only complying with a federal requirement rather than mandating a new program on local government. The same reasoning applies here: the decision to proceed in eminent domain is optional with the local government. Since the state does not mandate that the local agency incur the costs it claims, the agency is not entitled to reimbursement from the state.