[No. A074767. First Dist., Div. Five. Feb. 3, 1997.]

FIREMAN'S FUND INSURANCE COMPANIES, Plaintiff and Respondent, v.
CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, part II of this opinion is not certified for publication.

**COUNSEL**

William W. Palmer, Reid A. McClaran, Elizabeth Mohr, Donald P. Hilla, Jr., Strumwasser & Woocher, Michael J. Strumwasser, Fredric D. Woocher and Raleigh H. Levine for Defendant and Appellant.

Thomas A. Swanson, McCutchen, Doyle, Brown & Enersen, Terry J. Houlihan and Robert A. Lewis for Plaintiff and Respondent.

**OPINION**

**HANING, J.**—Defendant and appellant Charles Quackenbush, as Insurance Commissioner of the State of California (the Commissioner), appeals an order directing him to set aside his prehearing decision concerning admission of evidence in the Proposition 103 (Ins. Code, § 1861.01 et seq.) rate reduction hearing of plaintiff and respondent Fireman's Fund Insurance Companies (Fireman's Fund). We affirm.

BACKGROUND

On November 8, 1988, the voters approved an initiative familiarly known as Proposition 103. Proposition 103 enacts a statutory scheme requiring insurers to reduce the rates of automobile and property-casualty insurance policies issued or renewed on or after November 8, 1988, to levels at least 20 percent less than the charges for the same coverage which were in effect on November 8, 1987. (Ins. Code, § 1861.01, subd. (a).) It requires the Commissioner to review and approve rate increases. (Ins. Code, § 1861.01, subd. (c).) It allows insurers to seek relief from rates they consider confiscatory (Ins. Code, § 1861.05, subds. (a) & (b)) and establishes a hearing scheme to determine whether any relief is warranted. (Ins. Code, § 1861.08). Hearings, commonly called rollback hearings, are conducted by an administrative law judge (ALJ), whose decision is adopted, amended or rejected by the Commissioner. (Ins. Code, § 1861.08.)

The order from which this appeal is taken emanates from a rollback hearing to determine the amount, if any, by which Fireman's Fund must reduce its rates. The fundamental issue in the appeal is whether the Commissioner has authority to review an ALJ's interim evidentiary rulings while the administrative hearing is pending.

After the Commissioner noticed a hearing on the refund obligations of Fireman's Fund, Fireman's Fund prefiled the direct testimony of its 12 witnesses and the 116 associated exhibits, as required by California Code of Regulations, title 10, section 2655.6. The California Department of Insurance (CDI) moved to strike portions of this testimony on the ground that it attempted to relitigate the regulations implementing Proposition 103's rate rollback provisions, including a regulation barring relitigation (Cal. Code Regs., tit. 10, § 2646.4, subd. (e)), which regulations had been upheld by the Supreme Court in *20th Century Ins. Co.* v. *Garamendi* (1994) 8 Cal.4th 216 [32 Cal.Rptr.2d 807, 878 P.2d 566] (*20th Century*).

A hearing on CDI's motion to strike was held before ALJ Hadley Batchelder, who was assigned to conduct the rollback hearing. On March 9, 1996, ALJ Batchelder ordered certain evidence stricken, and otherwise denied the motion.

On March 15, 1996, the rollback proceedings were reassigned to ALJ Joe H. Henderson. In April CDI moved the presiding ALJ for certification of three questions to the Commissioner (Cal. Code Regs., tit. 10, § 2646.2):

1. Whether, under the regulations and *20th Century*, an insurer may seek to prove a constitutional right to a rollback other than the constitutional

percentage defined by California Code of Regulations, title 10, section 2645.9, subdivision (a).

2. Whether, assuming the answer to the first question is affirmative, an insurer seeking to prove confiscation may challenge the components of the formula or is limited to challenging its end result.

3. Whether a showing that the constitutional percentage denies the insurer the opportunity to recover its reasonable out-of-pocket expenses is a necessary condition to any proof of the confiscation outside the definition of the constitutional percentage.

As an alternative CDI also moved for reconsideration of the denial of its motion to strike.

On April 25, 1996, ALJ Henderson denied both motions. The same date, CDI requested the Commissioner directly to certify and give directions on the three questions. On April 26 the Commissioner granted Fireman's Fund until May 3 to file its response to CDI's request, both on whether the Commissioner should consider the questions "at this time," and on the substance of the questions themselves.

On May 1, 1996, the rollback hearing was reassigned to ALJ Jennifer Gee and was scheduled to begin May 9.

On May 8, 1996, the Commissioner granted CDI's certification request for an order giving directions. He responded to the three questions and directed ALJ Gee to reconsider ALJ Batchelder's March 9 order denying CDI's motion to strike and to issue a revised order consistent with his May 8 decision.

On May 9, 1996, ALJ Gee, although questioning the Commissioner's authority to issue his May 8 decision, construed it to mean that testimony challenging components of the rate rollback formula were to be stricken, but not testimony relating to the numbers to be factored into a particular component. She asked for additional briefing on the motion to strike, scheduled the hearing thereon for May 24, and continued the evidentiary hearing until June 3.

On May 22, 1996, Fireman's Fund petitioned the superior court for a writ of mandate (Code Civ. Proc., § 1094.5; Ins. Code, § 1861.08; Gov. Code, § 11512; Cal. Code Regs., tit. 10, § 2646.2) directing the Commissioner to set aside his May 8 order and to refrain in the future from usurping the

delegated authority of the ALJ in the rollback hearing. Fireman's Fund argued that the ALJ alone was authorized to certify a question to the Commissioner, so the Commissioner's May 8 decision was beyond his jurisdiction.

ALJ Gee postponed the scheduled May 24, 1996, hearing pending a ruling on Fireman's Fund's petition. On June 3 the superior court filed its order granting Fireman's Fund's petition. It ordered the Commissioner to set aside his May 8 decision on the ground that: "[ALJ's] are to make their evidentiary rulings independently as is required under, among other sections[,] Government Code [section] 11512, Insurance Code [section] 1861.08 and California Code of Regulations[, title 10, sections] 2654.1 and 2646.2."

On June 7, 1996, the Commissioner filed this appeal from the trial court's order. He also filed a petition for writ of prohibition and mandamus with this court, which was denied on the ground that his appeal was an adequate remedy at law. ALJ Gee then treated the Commissioner's May 8 order as stayed, and on June 17 commenced the rollback hearing.

DISCUSSION

I

We observe preliminarily that although Fireman's Fund's petition to the trial court referred in its caption to Code of Civil Procedure section 1094.5, i.e., writ of administrative mandate, neither the text of the petition itself nor the court's order from which this appeal is taken refers to any specific statute. Insofar as the petition alleges that the Commissioner failed to comply with the laws applicable to the conduct of rollback hearings and the trial court concluded the Commissioner's decision was in excess of his authority, the petition and resulting order are more accurately characterized as traditional mandate—a writ to compel the performance of a legal duty imposed on a government official. (Code Civ. Proc., § 1085; *Environmental Protection Information Center, Inc.* v. *Maxxam Corp.* (1992) 4 Cal.App.4th 1373, 1380 [6 Cal.Rptr.2d 665].) For purposes of this appeal the difference between administrative and traditional mandate is unimportant because the material facts are not disputed. The question presented involves statutory interpretation, a purely legal question on which appellate courts rule de novo. (*McIntosh* v. *Aubry* (1993) 14 Cal.App.4th 1576, 1584 [18 Cal.Rptr.2d 680].)

Proposition 103 specifies that with certain exceptions rollback hearings are conducted pursuant to the Administrative Procedure Act (APA).

(Gov. Code, § 11500 et seq.; Ins: Code, § 1861.08.) Under the APA a case is heard either by the agency itself, presided over by an ALJ who rules on the admission and exclusion of evidence, or an ALJ alone, exercising all powers relating to the conduct of the hearing. (Gov. Code, § 11512, subd. (b).) If an ALJ conducts a hearing, he or she submits a proposed decision to the agency, which may adopt the decision in its entirety, decide the case itself upon the record with or without taking additional evidence, or refer the case back to the ALJ to take additional evidence. (Gov. Code, § 11517, subds. (b) & (c).)

Proposition 103 contains two significant exceptions to the APA: (1) only an ALJ, not the agency itself, hears the case; and (2) the Commissioner, i.e., the agency, is limited to adopting, amending or rejecting the ALJ's proposed decision "solely on the basis of the record." (Ins. Code, § 1861.08.) The significance of this procedural distinction is that the Commissioner cannot reopen a rollback hearing to receive additional evidence, but is confined to the record developed before the ALJ.[2]

The regulations governing rollback hearings promulgated under this statutory scheme state that, "To the extent not otherwise specified by law or regulation, the [ALJ] shall: control the course of proceedings; . . . receive evidence; . . . rule upon all objections or motions which do not involve final determination of proceedings; . . . [and] receive offers of proof . . . ." (Cal. Code Regs., tit. 10, § 2654.1, subd. (a).) Specifically, ALJ's "shall admit evidence [they find] relevant to the determination" of "the minimum nonconfiscatory rate." (Cal. Code Regs., tit. 10, § 2646.4, subd. (e).) The foregoing regulations are consistent with the authority granted the ALJ by the APA to rule on the admission and exclusion of evidence. (Gov. Code, § 11512, subd. (b).)

■ An administrative agency has only those powers conferred on it by statute, and may not exceed them. (*Larson* v. *State Personnel Bd.* (1994) 28 Cal.App.4th 265, 273-274 [33 Cal.Rptr.2d 412].) ■ The primary rule of statutory construction is to ascertain the enacting body's intent in order to effectuate the statute's purpose. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] (*Moyer*).) An aid to ascertaining intent is the rule that the expression of some things in a statute necessarily means the exclusion of others. (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

---

[2]If the Commisioner feels that additional evidence is necessary, the matter may be remanded to the ALJ for that purpose. (Gov. Code, § 11517, subd. (c), as limited by Ins. Code, § 1861.08.)

■ Proposition 103 expressly states that only ALJ's will conduct hearings, the converse of which is that the Commissioner will not. If the conduct of hearings is limited to ALJ's, evidentiary rulings are necessarily limited to ALJ's. Furthermore, Proposition 103 restricts the Commissioner to making his final decision "solely on the basis of the record." (Ins. Code, § 1861.08.) The record is developed at the hearing, which the Commissioner does not conduct. (Ins. Code, § 1861.08.) Were the Commissioner to rule on interim evidentiary rulings, he would in effect be participating in the conduct of the hearing and also conducting an unauthorized interim review.

The Commissioner relies on an amendment to the APA to support his position that he may review interim evidentiary rulings. As noted, *ante*, the APA states that an ALJ shall rule on the admission and exclusion of evidence. (Gov. Code, § 11512, subd. (b).) Effective July 1, 1997, Government Code section 11512, subdivision (b) has been amended to add that an ALJ's rulings admitting or excluding evidence are subject to review "in the same manner and to the same extent as the [ALJ]'s proposed decision in the proceeding." (Stats. 1995, ch. 938, § 39, eff. July 1, 1997.) The California Law Revision Commission's comment states that the amendment is "to overrule any contrary implication that might be drawn from the language of subdivision (b)." (Recommendation Administrative Adjudication by State Agencies (Jan. 1995) 25 Cal. Law Review Com. Rep. (1995) p. 234.) The Commissioner argues that this comment "makes it clear" that the amendment was not a change in the law. His apparent argument is that, contrary to the general rule that statutes operate prospectively, the amending language may be applied hereto because it is simply declarative of existing law.

We question that the amendment does not change existing law. The amendment was drafted by the California Law Revision Commission as part of a major revision of the law governing administrative adjudications by state agencies. The purpose of the revision was to modernize and improve the APA "to reflect experience over the past 50 years." (25 Cal. Law Revision Com. Rep., *supra*, pp. 59, 115.) The commission identifies the review of evidentiary rulings among the "Significant changes from existing law." (*Id.* at pp. 115, 118.) It states: "It is not clear whether an [ALJ]'s evidentiary rulings are subject to administrative review. Arguably, the rulings are conclusive. . . . The proposed law makes clear that the agency head may review evidentiary determinations of the [ALJ]. The adjudicative authority is vested in the agency head, and the agency head should be the ultimate administrative decisionmaker." (*Id.* at pp. 118-119, fn. omitted.) This history of the amendment to Government Code section 11512, subdivision (b) suggests more than a simple clarification of existing law, as the Commissioner asserts.

However, assuming the Legislature intended the amendment merely to restate existing law (see *GTE Sprint Communications Corp.* v. *State Bd. of Equalization* (1991) 1 Cal.App.4th 827, 833 [2 Cal.Rptr.2d 441]), we do not construe Government Code section 11512, subdivision (b) as reflecting a legislative intent that the agency, i.e., the Commissioner, can review evidentiary or other procedural rulings *during* the course of the hearing. Under familiar rules of statutory construction, words are to be given their usual, ordinary meaning and the various parts of a statute are to be harmonized by considering particular clauses or sections in the context of the statutory framework as a whole. (See *Moyer, supra,* 10 Cal.3d at pp. 230-231.) The interplay of Proposition 103 and the APA requires the ALJ, not the Commissioner, to conduct rollback hearings and prepare a proposed decision, and the Commissioner to issue a final decision based on the record developed at the hearing, i.e., *after* the hearing is concluded. At most, the amendment to Government Code section 11512, subdivision (b), clarifies that the Commissioner is not bound by the evidentiary rulings made by the ALJ during the hearing, but in making the final decision may determine that certain evidence was erroneously admitted and so not factor it into his decision.[3] In other words, the Commissioner's review of the ALJ's evidentiary rulings takes place as part of the process by which he adopts, amends or rejects the ALJ's proposed decision. (Gov. Code, § 11517, subd. (c); Ins. Code, § 1861.08.)

We also observe that the Commissioner's own regulations governing the conduct of rollback hearings impliedly recognize that, by statute, an ALJ's evidentiary rulings may be reviewed only after the hearing is concluded. The Commissioner has promulgated regulations permitting parties who disagree with an ALJ's discovery rulings to invoke the Commissioner's review thereof and obtain a decision thereon. (Cal. Code Regs., tit. 10, § 2655.1, subd. (e).) He has not promulgated comparable regulations regarding evidentiary rulings. Instead, as we have noted, both the regulations and the APA specify that evidentiary rulings are for the ALJ. (See Cal. Code Regs., tit. 10, §§ 2646.4, subd. (e) & 2654.1, subd. (a); Gov. Code, § 11512.)

Finally, we reiterate the rule that statutes are to be sensibly interpreted to achieve their intended result. (*Citizens Utilities Co.* v. *Superior Court* (1963) 59 Cal.2d 805, 811 [31 Cal.Rptr. 316, 382 P.2d 356].) There is an obvious, practical reason why the Commissioner should not interfere with an ALJ's

---

[3]Conversely, if the evidentiary ruling is one denying the admission of evidence, it is incumbent upon the proponent of the rejected evidence to make a sufficient offer of proof for the Commissioner's review, in the event the Commissioner concludes that the evidence is relevant to the final decision.

evidentiary rulings. Were a party allowed to seek relief from the Commissioner whenever it received an unfavorable ruling from the ALJ on an objection, the proceedings would be interminably protracted and the ALJ's ability to conduct the hearing inhibited. Moreover, the net result of a ruling, even one erroneous on its face, is not apparent until the hearing is concluded, at which time the Commissioner may consider its effect on the hearings as a whole. Proposition 103 states in section 1 that "*[P]roperty-casualty insurance rates shall be immediately rolled back . . . ,*" in section 2 that "*The purpose of this chapter is . . . to ensure that insurance is fair, available, and affordable for all Californians*," and in section 8, subdivision (a) that "*This act shall be liberally construed and applied in order to fully promote its underlying purpose.*" (Stats. 1988, Prop. 103, §§ 1, 2 & 8, pp. A-276, A-290, original italics, underscore added.) Proposition 103's goal of establishing at least a rapid, if not "immediate," reduction of insurance rates and "fair, available, and affordable" insurance will not be achieved if the rollback hearings are not expeditiously conducted.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

Since this appeal was argued and supplemental briefing received, the parties have stipulated to a dismissal of the appeal on the ground that they have settled the dispute. *Neary* v. *Regents of University of California* (1992) 3 Cal.4th 273 [10 Cal.Rptr.2d 859, 834 P.2d 119] (*Neary*) held that "[A]s a general rule parties are entitled to a stipulated reversal by the Court of Appeal absent a showing of extraordinary circumstances that warrant an exception." (*Id.* at p. 275.) In *Neary* the parties sought a stipulated reversal of the trial court's judgment prior to briefing and submission of the matter for decision. In *Lucich* v. *City of Oakland* (1993) 19 Cal.App.4th 494 [23 Cal.Rptr.2d 450] this court observed that appellate courts may refuse to dismiss a pending appeal pursuant to stipulation where oral argument has been held and the matter submitted for decision. (*Id.* at p. 502.)

In addition, *Neary* indicated that considerations of public interest or the potential for collateral estoppel may militate against a stipulated reversal. (*Neary, supra,* 3 Cal.4th at pp. 283-284.) Both considerations are present here. The continuing nature and number of rollback hearings involve substantial public interest considerations of economy and efficiency. The potential for collateral estoppel is also present. Finally, the parties do *not* ask this

---

*See footnote 1, *ante*, page 599.

court to reverse the trial court's decision—their proposed settlement depends upon the trial court's independent decision to vacate the writ of mandate. For all the foregoing reasons, we decline to dismiss the appeal.

## DISPOSITION

The order is affirmed.

Peterson, P. J., and Jones, J., concurred.

A petition for a rehearing was February 26, 1997, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 21, 1997.