[No. A072693. First Dist., Div. Four. Sept. 9, 1997.]

ECONOMIC EMPOWERMENT FOUNDATION, Plaintiff and Appellant,
v.
CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Defendant
and Respondent;
FARMERS INSURANCE GROUP OF COMPANIES, Real Party in
Interest and Respondent.

COUNSEL

Gil M. Coogler for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Respondent.

Barger & Wolen, Steven H. Weinstein and Richard G. De La Mora for Real Party in Interest and Respondent.

OPINION

**HANLON, J.**—The Economic Empowerment Foundation (EEF) appeals from an order dismissing its complaint and petition for mandate against defendant and respondent Charles Quackenbush, as Insurance Commissioner of the State of California (Commissioner), and real party in interest and respondent the Farmers Insurance Group of Companies (Farmers), after respondents' demurrers to the complaint and petition were sustained without leave to amend. EEF seeks an award, payable by Farmers, of fees and expenses EEF incurred representing the interests of consumers in proceedings before the Department of Insurance (Department) on Farmers' applications for certain insurance rate increases.

The issues are whether EEF's claim for fees is originally cognizable in court under Insurance Code section 1861.10 and, if not, whether EEF is excused under the "futility" exception to the exhaustion of administrative remedies requirement from seeking a fee award from the Commissioner in the first instance. We conclude that the court does not have original jurisdiction over the fee claim, and that EEF must exhaust its administrative remedy before pursuing a court action on that claim. Accordingly, we affirm the order of dismissal.

## I. BACKGROUND

Ratemaking and rate regulation for various classes of insurance are governed by the McBride-Grunsky Insurance Regulatory Act of 1947 as amended (McBride Act), set forth in division 1, part 2, chapter 9 of the Insurance Code (Ins. Code, §§ 1851-1861.16).[1] (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 384 [6 Cal.Rptr.2d 487, 826 P.2d 730]; 1 Cal. Insurance Law & Practice (1997) § 6A.04, pp. 6A-17 to 6A-21.) Provisions for reduction, setting and adjustment of rates were added as

---

[1]Unless otherwise indicated, all further statutory references are to the Insurance Code.

article 10 to the McBride Act by Proposition 103 (Prop. 103, § 3), including section 1861.10, which provides: "(a) Any person may initiate or intervene in any proceeding permitted or established pursuant to this chapter, challenge any action of the commissioner under this article, and enforce any provision of this article. [¶] (b) The commissioner or a court shall award reasonable advocacy and witness fees and expenses to any person who demonstrates that (1) the person represents the interests of consumers, and, (2) that he or she has made a substantial contribution to the adoption of any order, regulation or decision by the commissioner or a court. Where such advocacy occurs in response to a rate application, the award shall be paid by the applicant."[2]

The Department has promulgated regulations for payment of fees and expenses (hereafter fees) under section 1861.10, subdivision (b), to consumer-interest interveners and participants (hereafter interveners) in McBride Act proceedings. (Cal. Code Regs., tit. 10, § 2662.1 et seq.)[3] Interveners wishing to recover fees must first file a request for a finding of eligibility to seek compensation, which establishes that the intervener represents the interests of consumers. (Cal. Code Regs., tit. 10, §§ 2662.2, 2662.3, subd. (a).) Those found eligible to seek compensation must then file a request for an award of compensation, which details the intervener's services and expenditures, and describes the intervener's "substantial contribution" to the proceeding. (Cal. Code Regs., tit. 10, § 2662.2, subd. (a).) The "substantial contribution" must be "evidenced by specific citations to the intervenor's direct testimony, cross-examination, legal arguments, briefs, motions, discovery, or any other appropriate evidence." (Cal. Code Regs., tit. 10, § 2662.5, subd. (a)(1).) Compensation may be reduced to the extent that the intervener's substantial contribution "duplicates" that of another party to the proceeding. (Cal. Code Regs., tit. 10, § 2662.5, subd. (b).) "Duplication" turns on whether the intervener "presented relevant issues, evidence, or arguments which were separate and distinct from those presented by any party or the Department of Insurance staff." (Cal. Code Regs., tit. 10, § 2662.5, subd. (b).)

The request for an award may be submitted "within 30 days after the service of the order, decision, regulation or other action of the Commissioner in the proceeding for which intervention was sought, or at the requesting intervenor's or participant's option, within 30 days after the conclusion of

---

[2]Subdivision (c) of section 1861.10, which provided for establishment of a nonprofit consumer advocacy corporation, was held to be unconstitutional in *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 831-837 [258 Cal.Rptr. 161, 771 P.2d 1247].

[3]These regulations have replaced those in effect during appellant's intervention. (Former Code Regs., tit. 10, § 2619.1 et seq.) Since the differences between the current and previous regulations are of little relevance to this appeal, we will refer in the body of the opinion only to the current set.

the entire proceeding." (Cal. Code Regs., tit. 10, § 2662.3, subd. (a).) An intervener may submit amended requests for compensation if it incurs additional fees after a previous request. (Cal. Code Regs., tit. 10, § 2662.4.) The Commissioner issues a written decision determining whether there has been a substantial contribution and specifying the amount of any award. (Cal. Code Regs., tit. 10, § 2662.6, subd. (d).) Awards owed by insurance companies must be paid within 30 days after the Commissioner's decision, or 30 days after the ruling on any petition for reconsideration or judicial challenge of the Commissioner's decision. (Cal. Code Regs., tit. 10, § 2662.7.)

EEF intervened in proceedings under Department file Nos. PA-94-0031-OA and PA-94-0031-OB on Farmers' applications for rate increases in personal and commercial lines of earthquake insurance, and the Commissioner's predecessor issued an order determining that EEF was eligible to receive compensation in those proceedings. The order noted that EEF was not "insure[d] [of] compensation" by virtue of the finding of eligibility. To receive an award, EEF would need to submit "detailed substantiating documentation" showing that it had made a "substantial contribution" to the adoption of the final order in the proceedings. On June 2, 1995, the Commissioner issued an order in the proceedings which granted specified rate increases to Farmers.

On June 30, 1995, EEF filed its complaint for declaratory relief and petition for writ of mandate herein. The complaint sought a declaration that EEF was entitled to fees of $187,588.53 for its work in the Farmers' rate proceedings, plus its fees in court for securing this award. The complaint asserted that the court was authorized to make the award under section 1861.10, subdivision (b). It enumerated the pleadings filed, testimony furnished, witnesses examined, and issues briefed by EEF in the administrative proceedings. It alleged that the issues raised by EEF did not materially duplicate those raised by the Department, and listed the pleadings filed, testimony presented and issues briefed by the Department.

In the alternative to the relief sought in the complaint, the petition requested an order finding that the Commissioner was "disqualified" to rule on EEF's request for fees, and directing that the Commissioner award fees to EEF in an amount to be determined by the court. The petition alleged that the Commissioner had "engaged in a public campaign of hostility" against consumer intervention in Department proceedings generally, and against EEF specifically. It quoted a press release from the Commissioner stating that EEF had been getting " 'fat off the public trough' " and " 'lining their pockets with taxpayer dollars.' " It noted, however, that rate applicants, not the public, pay intervener fees in rate proceedings, and indicated that rate

proceedings "comprise the vast majority of proceedings that generate intervention fees." The petition averred that the Commissioner was biased against EEF and other interveners, and described other rate proceedings in which the Commissioner had allegedly refused without justification to award compensation to EEF.[4] The petition asserted that the court had the power to disqualify the Commissioner for bias under Government Code section 11512, subdivision (c), which refers to disqualification of "any administrative law judge or agency member" who hears an administrative case.

The Commissioner and Farmers demurred on the grounds that the action should be dismissed under the exhaustion of administrative remedies doctrine, or stayed under the primary jurisdiction doctrine pending a ruling from the Commissioner on the fee request. The Commissioner and Farmers also objected that the court was not authorized under Government Code section 11512 to disqualify the Commissioner from ruling on the fee claim.

The demurrers were sustained without leave to amend. In its orders, the court stated that the complaint was "premature" under the primary jurisdiction doctrine, and that EEF was required to obtain a ruling from the Commissioner on the fee request before the court would consider the matter. The court also concluded that it lacked jurisdiction to disqualify the Commissioner from ruling on EEF's fees. An order was then entered dismissing the case.

## II. Discussion

### A. *EEF's Contentions*

On appeal from the order of dismissal, EEF advances two lines of argument. EEF contends, first, that section 1861.10 confers concurrent jurisdiction on the courts and the Commissioner to entertain requests for intervention fees in the first instance. If, as EEF maintains, its claim is " 'originally cognizable in the courts,' " then the issue is whether the court's decision to refer the matter to the Commissioner was justified under the primary jurisdiction doctrine. (*Farmers Ins. Exchange* v. *Superior Court*, *supra*, 2 Cal.4th at pp. 390-391.) ▮ Under this doctrine, a court has discretion to defer ruling on a claim within its original jurisdiction pending an administrative determination of the claim if the "interests of justice" so require. (*Id.* at pp. 381, 391, fn. 9.) In exercising this discretion, the court

---

[4]The petition also cited the Department's new regulations for intervener compensation (see fn. 3, *ante*) as further evidence of the Commissioner's bias. It alleged that the current regulations "gut[ted]" the compensation scheme by eliminating prior provisions for interim funding and establishing a higher standard for the showing of "substantial contribution."

may consider various factors, including the need for administrative expertise and the promotion of uniformity in the application of regulatory laws. (*Id.* at p. 391.) EEF submits that the primary jurisdiction doctrine cannot properly be applied to defer a judicial determination of its claim for fees. EEF also notes that, even if the doctrine could be so applied, the proper disposition would be to stay the case rather than dismiss it. (*Id.* at p. 401.)

EEF argues in the alternative that the court should resolve the fee claim, even if the claim is within the Commissioner's exclusive jurisdiction, because the Commissioner's bias makes it futile for EEF to pursue the administrative remedy.[5] ▮ If a claim is cognizable in the first instance by an agency alone, the doctrine of exhaustion of administrative remedies applies rather than the primary jurisdiction doctrine. (*Farmers Ins. Exchange* v. *Superior Court*, *supra*, 2 Cal.4th at p. 390.) The exhaustion doctrine "is not a matter of judicial discretion, but is a fundamental rule of procedure" (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715]) under which "relief must be sought from the administrative body and this remedy exhausted before the courts will act" (*id.* at p. 292). The doctrine is subject to a "futility exception," where it can be "positively state[d] that the administrative agency has declared what its ruling will be in a particular case." (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 318, p. 412.)

## B. *Jurisdiction*

The threshold issue is thus one of jurisdiction: Is a claim for fees for intervention in an insurance rate proceeding originally cognizable in court? If so, the primary jurisdiction doctrine applies; if not, the relevant doctrine is exhaustion of administrative remedies. The statute, once again, reads in pertinent part: "The commissioner or a court shall award reasonable advocacy and witness fees and expenses to any person who demonstrates that (1) the person represents the interests of consumers, and, (2) that he or she has made a substantial contribution to the adoption of any order, regulation or decision by the commissioner or a court." (§ 1861.10, subd. (b).)

---

[5]EEF does not contest dismissal of its petition to "disqualify" the Commissioner under Government Code section 11512, but submits that the petition's allegations of bias show that resort to the administrative remedy would be futile. In reviewing a judgment of dismissal after the sustaining of a demurrer without leave to amend, we must consider whether EEF's allegations state a cause of action under any legal theory (*Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186]; *Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601]), and we note that new theories may be advanced for the first time on appeal in this context (Code Civ. Proc., § 472c; *Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387]).

■ A statute is to be interpreted so as to effectuate its apparent purpose (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; *In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744]), and that purpose is determined in the first instance by the language used in the statute (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406]). If the language is clear and unambiguous there is no need for construction or resort to the legislative history. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] [describing the "plain meaning" rule].)

■ The words to be deciphered here, that the "commissioner or a court shall award fees . . . [for substantial contributions] to the adoption of any order, regulation or decision by the commissioner or a court" could reasonably be interpreted in at least two ways. They could mean, as EEF urges, that either the Commissioner or a court may award fees for contribution to any order or decision of the Commissioner or a court, regardless of whether the proceeding in which the order or decision was rendered was conducted before the agency or the court. In that event, the court would have original jurisdiction to award the fees at issue here and, by the same token, the Commissioner would have original jurisdiction to award fees for contribution to a court action.

Alternatively, the language could be interpreted to mean that the Commissioner can award fees only for contributions to his own orders and decisions, and a court can award fees only for contributions to its own orders and decisions. In the Commissioner's view, the statute "simply allows the Commissioner to make awards for advocacy at the administrative level and the courts to make awards for advocacy at the judicial level." Farmers likewise perceives a "logical division" in the statute based on the fact that the Commissioner is in the best position to determine whether a consumer has "substantially contributed" to one of his decisions, and a court is best situated to rule on a contribution to a matter before the court.

EEF's brief places the words "commissioner or a court" as they first appear in the statute in boldface type, but the parties do not otherwise attempt to parse the language of the statute for support for their interpretations. EEF's interpretation is that the words "commissioner or a court" as they first appear in the statute refer interchangeably to all that follows, without distinction between actions of the agency and the courts. But one would expect consistent use of the words "commissioner or a court" throughout the statute, and they are not used interchangeably at the end of the statute, where such a reading of the phrase "any order, regulation or decision by the commissioner or a court" would erroneously imply that a

court can issue regulations. Thus, respondents may have the slightly stronger position as a matter of semantics. However, respondents' proposed "division" between orders and decisions of the Commissioner on the one hand, and those of the court on the other, would be clearer if the word "respectively" had been added after one or both of the references to the "commissioner or a court." Without that word or its equivalent, the language is ambiguous. We discern no "plain meaning" in the statute that resolves our issue.

■ Where, as here, the statutory language is susceptible of opposing interpretations, a meaning must be imputed which comports with the objective the statute seeks to achieve. (*American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 485-486 [225 Cal.Rptr. 280].) We must be mindful of "the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]), and look for a "sensibl[e]" and "practical" construction of the law (*Fireman's Fund Ins. Companies* v. *Quackenbush* (1997) 52 Cal.App.4th 599, 607 [60 Cal.Rptr.2d 732]).

Not surprisingly, the ballot pamphlet for Proposition 103 does not refer to the narrow point at issue. (See *RLI Ins. Co. Group* v. *Superior Court* (1996) 51 Cal.App.4th 415, 431 [59 Cal.Rptr.2d 111] [making the same observation with respect to another procedural matter under Prop. 103].) The purpose of intervener fees is evidently to encourage consumers to participate in insurance rate proceedings by compensating them for their contribution. (See *Calfarm Ins. Co.* v. *Deukmejian, supra*, 48 Cal.3d at p. 836 [voters for Prop. 103 "favored a measure that provides for public regulatory hearings with consumer participation"].)[6] Thus, we should seek an interpretation of the statute which best facilitates compensation.

This general consideration is of no assistance, however, because it is not apparent that either of the proposed interpretations furthers the aim of

---

[6]Our Supreme Court has described the "special contributions" public interest groups can make in the analogous context of ratesetting by the Public Utilities Commission. (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 911 [160 Cal.Rptr. 124, 603 P.2d 41], disapproved on another point in *Kowis* v. *Howard* (1992) 3 Cal.4th 888 [12 Cal.Rptr.2d 728, 838 P.2d 250].) "[P]ublic interest interveners such as TURN [Toward Utility, Rate Normalization] speak for a substantial segment of the population that otherwise may go unheard. . . . the commission staff cannot fully and adequately represent all facets of the public interest, and in some instances . . . it may fail to discern the ratepayers' rights. Public interest interveners therefore fill a gap in the ratemaking process. [¶] . . . Effective participation in complex commission hearings, however, requires technical expertise and continuous scrutiny of various proposals and rulings. Groups such as TURN provide that expertise and scrutiny as a counterweight to the views expressed by the utilities." (25 Cal.3d at p. 911.) Thus, such participation is to be " 'encouraged' " and " 'commended.' " (*Ibid.*)

intervener compensation any better than the other. From the standpoint of those seeking compensation, it might be said that two alternative remedies—judicial and administrative—in every case are better than one. But EEF will eventually have recourse to the court in this case even if we do not adopt EEF's reading of the statute, because the Commissioner's decisions on fee requests are subject to judicial review. (§ 1861.09; Cal. Code Regs., tit. 10, § 2662.7, subd. (b).) Moreover, judicial review in this context is conducted under the independent judgment test. (§ 1858.6.)[7] Thus, the option EEF advocates of a court action for fees in the first instance affects only the timing, and not the availability, of an independent judicial determination.

We are left, then, to consider the practical consequences of the proposed interpretations of section 1861.10 (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387; *Fireman's Fund Ins. Companies* v. *Quackenbush, supra,* 52 Cal.App.4th at p. 607), and we find problems on this score with both sides' positions.

The Commissioner submits that a court action for fees makes little sense in this case, because it would require the court "to make the initial determination of the value of advocacy which EEF presented elsewhere and which involved a specialized area of expertise." Setting aside the allegations of bias, the Commissioner's point is a valid one.

EEF's complaint lists 29 pleadings it filed, and 16 issues it raised, in the Farmers' rate proceedings. The complaint identifies 4 EEF witnesses who provided written testimony, and cites 15 sections of a transcript spanning over 1,700 pages which involved oral testimony from EEF witnesses or examination of witnesses by EEF. To enable the court to assess whether EEF's work duplicated that of the Department, the complaint refers to 10 pleadings filed by the Department, written testimony lodged by the Department, and 11 issues raised in the Department's briefs. Fifty-four pages of time and disbursement records of the five EEF advocates—a "chief advocate," attorney, actuary, economist and seismologist—seeking compensation are attached as exhibits to the complaint.

It is evident that the court would need to undertake a detailed review of a lengthy and technical administrative record to determine EEF's entitlement

---

[7]Section 1858.6 provides in relevant part: "Any finding, determination, rule, ruling or order made by the commissioner under this chapter shall be subject to review by the courts of the State and proceedings on review shall be in accordance with the provisions of the Code of Civil Procedure. In such proceedings on review, the court is authorized and directed to exercise its independent judgment on the evidence and unless the weight of the evidence supports the findings, determination, rule, ruling or order of the commissioner, the same shall be annulled."

to fees. The court is entirely unfamiliar with this record and has no routine exposure to ratesetting issues. The Commissioner, on the other hand, is familiar with the issues (see *Farmers Ins. Exchange* v. *Superior Court, supra,* 2 Cal.4th at p. 398 [acknowledging Commissioner's presumed expertise in ratesetting matters]), and with this record, having reviewed it in order to rule on the rate applications. The Commissioner is clearly in a better position than the court to make an initial assessment of EEF's contribution to the administrative proceeding. Thus, considerations of efficiency militate against a construction of the statute which would afford initial recourse to the court in this case.[8]

There are also difficulties with the Commissioner's interpretation of the statute. Under the Commissioner's reading, he can award compensation only for "advocacy at the administrative level," and a court can award compensation only for "advocacy at the judicial level." This narrow construction becomes problematic where a rate decision is subjected to judicial review, and a single rate proceeding encompasses advocacy before both the Department and the court.

For example, the Commissioner could rule on a rate, the ruling could be challenged by mandamus (§ 1861.09), the court could decide that further administrative hearings were required, and those additional hearings could result in a final rate determination. An intervener who substantially contributed at each stage of this process, before both the Department and the court, could then request a fee award from the Commissioner. (See Cal. Code Regs., tit. 10, § 2662.3, subd. (a).) In this situation, the Commissioner should be empowered to award all of the intervener's fees, including fees for its advocacy in court.[9] There is no reason why the intervener should have to seek its fees for advocacy in court from the court alone, when the Commissioner is in a position to render the rest of the award and has dealt with the underlying issues. Fee applications to two forums for a single proceeding

---

[8]According to the petition, insurance rate proceedings comprise the "vast majority" of proceedings which involve intervention fees, and the briefs do not identify any actions susceptible to intervention which could be initiated in court rather than the Department. If such actions exist, then, under EEF's interpretation, requests for fees generated in those actions could be made to the Commissioner in the first instance. That procedure would be just as anomalous as a request to a court for an initial determination of the fees in an administrative proceeding. The interpretation we adopt avoids this problem and any related separation of powers concerns.

[9]Department regulations appear to contemplate this result when they give interveners the option to request an award after "the conclusion of the entire proceeding," rather than after "service of the order, decision, regulation or other action of the Commissioner in the proceeding for which intervention was sought." (Cal. Code Regs., tit. 10, § 2662.3, subd. (a).) It is unclear why the Commissioner would advocate a rule that limited his power in this regard.

would involve needless effort and expense. However, multiple applications would be required by a rule which limited the Commissioner's awards to amounts for "advocacy at the administrative level."[10]

To return to the language of the statute, the Commissioner's reading follows from an interpretation of the words "order" and "decision" to refer to *any* order or decision in a proceeding, rather than the final order or decision on the merits. We accept respondents' main point, that the statute contemplates a division of responsibilities between the court and the Commissioner, in which the court awards compensation for contributions to its orders and decisions, and the Commissioner awards compensation for contributions to his orders and decisions. The question, then, is what is meant by an "order" or "decision." If "order" or "decision" means *any* order or decision along the way in a proceeding, then there could be proceedings, like the one posited in the last paragraph, which would result in orders and decisions by both the Commissioner and a court. In the Commissioner's view, the intervener would be required in such a proceeding to seek separate awards in each forum for the portion of fees it incurred in obtaining orders or decisions from that forum.

A more "sensibl[e]" result (*Fireman's Fund Ins. Companies* v. *Quackenbush, supra*, 52 Cal.App.4th at p. 607) would obtain if the words "order" and "decision" in section 1861.10 are seen as referring only to final orders or decisions on the merits. Under this interpretation, accepting again that the statute grants separate and not overlapping powers to the Commissioner and the courts, the Commissioner would have exclusive original jurisdiction to award *all* fees incurred in any proceeding in which he renders the final order or decision, even if some of the fees are incurred in an ancillary court action. The court, on the other hand, would have sole jurisdiction over fees in any case in which it renders the final order or decision.[11] As a practical matter, this would mean that fees must be sought in the forum in which the case or proceeding originated. We will adopt this

---

[10]A rate proceeding could also involve advocacy before both the agency and a court where there is no judicial review on the merits. Rate hearings are conducted, with certain exceptions, pursuant to Administrative Procedure Act provisions at Government Code section 11500 et seq. (APA). (§ 1861.08; *RLI Ins. Co. Group* v. *Superior Court, supra*, 51 Cal.App.4th at pp. 429-430.) The APA affords interlocutory recourse to the courts in certain situations. (See, e.g., Gov. Code, §§ 11501, subd. (c), 11455.10, 11455.20 [contempt]; Gov. Code, § 11524, subd. (c) [denial of a continuance].) After the Commissioner has determined a rate, he should not be precluded from awarding the fraction of fees an intervener might incur in such an interlocutory court proceeding.

[11]We note in this regard that even where a court reviews agency action in a mandate proceeding and dictates how the agency is to proceed on an matter of law, the final decision is still rendered by the agency. (See Cal. Administrative Mandamus (Cont.Ed.Bar 1989) § 13.10, pp. 411-412.)

construction because it is consistent with the statutory language and it avoids practical problems created by the parties' interpretations.

We therefore conclude that the Commissioner has exclusive original jurisdiction over fees in proceedings, like the rate proceeding herein, which are commenced in the Department for a determination by the Commissioner on the merits. Since EEF's sole remedy under the statute is to seek an award from the Commissioner, the issue is whether the Commissioner's alleged bias excused EEF's admitted failure to pursue this administrative remedy.

### C. *Futility*

■ "A party need not pursue administrative remedies when the agency's decision is certain to be adverse." (*Collins* v. *Woods* (1984) 158 Cal.App.3d 439, 442 [204 Cal.Rptr. 650].) This "futility" exception to the exhaustion of administrative remedies requirement has been considered in many cases (see 3 Witkin, Cal. Procedure, *supra*, Actions, § 318, pp. 411-412; Cal. Administrative Mandamus, *supra*, § 2.47, pp. 60-61; *id.* (Cont.Ed.Bar Supp. 1997) pp. 33-34), including ratesetting matters under Proposition 103 (*Barnes* v. *State Farm Mut. Auto. Ins. Co.* (1993) 16 Cal.App.4th 365, 380-381 [20 Cal.Rptr.2d 87]). "The futility exception . . . is a very narrow one." (*County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 77 [222 Cal.Rptr. 750].) It does not apply " ' "unless the petitioner *can positively state* that the [administrative body] has declared *what its ruling will be in a particular case.*" ' " (*Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 418 [194 Cal.Rptr. 357, 668 P.2d 664]; see also *County of San Diego* v. *State of California* (1997) 15 Cal.4th 68, 89 [61 Cal.Rptr.2d 134, 931 P.2d 312].)

■ EEF contends that the futility exception applies here because the Commissioner is biased against it and other interveners seeking compensation. We must presume the truth of EEF's allegations of bias for purposes of the ruling on the demurrer. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)[12] EEF and other interveners are certainly entitled to receive fair determinations of their fees from the Commissioner. Indeed, one express purpose of Proposition 103 was to make the Commissioner "accountable" to consumers. (Prop. 103, Gen. Elec. (Nov. 8, 1988), § 2, reprinted in Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 8, 1988) p. 99.) But while the

---

[12]EEF and Farmers have asked us to take judicial notice of the Commissioner's treatment of fee applications in other proceedings insofar as it bears on the issue of bias. However, none of this evidence can properly be considered in the context of a demurrer. (See Code Civ. Proc., § 589 [demurrers deal only with issues of law].)

bias allegations are troubling, EEF does not and cannot assert that the Commissioner's decision on EEF's fee claim in this particular proceeding is *certain* to be adverse.

The Commissioner has established procedures for allowance of fees, EEF has not requested an award from the Commissioner in this proceeding, and the Commissioner has taken no position on the merits of such a request. The fact that the Commissioner may have treated EEF and other interveners unfairly in other proceedings does not establish that he is bound to do so in this one. (See *County of Contra Costa* v. *State of California, supra,* 177 Cal.App.3d at pp. 77-78 [possibility that claim would be honored precluded application of futility exception even though most other like claims had been dishonored in the past]; *Edgren* v. *Regents of University of California* (1984) 158 Cal.App.3d 515, 522 [205 Cal.Rptr. 6] [potential for unfairness did not establish futility].) Accordingly, we conclude that the futility exception does not apply to EEF's claim.

Cases falling within the futility exception are distinguishable. We do not have a situation where the agency: has no procedure for dealing with the claim (*Jacobs* v. *State Bd. of Optometry* (1978) 81 Cal.App.3d 1022 [147 Cal.Rptr. 225]); declined to take jurisdiction over the claim (*Department of Personnel Administration* v. *Superior Court* (1992) 5 Cal.App.4th 155, 171-172 [6 Cal.Rptr.2d 714]); already rejected the claim (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 384 [216 Cal.Rptr. 733, 703 P.2d 73]; *Doster* v. *County of San Diego* (1988) 203 Cal.App.3d 257, 262 [251 Cal.Rptr. 507]; *Collins* v. *Woods, supra,* 158 Cal.App.3d at p. 443); announced its position on the claim (*Grier* v. *Kizer* (1990) 219 Cal.App.3d 422, 431 [268 Cal.Rptr. 244]; *Vernon Fire Fighters* v. *City of Vernon* (1980) 107 Cal.App.3d 802, 828 [165 Cal.Rptr. 908]; *Huntington Beach Police Officers' Assn.* v. *City of Huntington Beach* (1976) 58 Cal.App.3d 492, 498-499 [129 Cal.Rptr. 893]); issued rulings which would preclude the claim's allowance (*County of San Diego* v. *State of California, supra,* 15 Cal.4th at pp. 82, 90; *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 832, 834 [112 Cal.Rptr. 761]; *Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d 613, 632-633 [129 Cal.Rptr. 575], disapproved on another point in *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25]; cf. *Sea & Sage Audubon Society, Inc.* v. *Planning Com., supra,* 34 Cal.3d at pp. 418-419; *Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82, 91-93 [143 Cal.Rptr. 441]); refused to accept the claim for filing (*Automotive Management Group, Inc.* v. *New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1015-1016 [24 Cal.Rptr.2d 904]); or indicated that it would not consider the claimant's evidence (*Kirkpatrick* v. *City of Oceanside* (1991) 232 Cal.App.3d 267, 277-278 [283 Cal.Rptr. 191]).

Applicability of the futility exception may be an issue of fact in some cases (see *Twain Harte Associates, Ltd.* v. *County of Tuolumne* (1990) 217 Cal.App.3d 71, 89-91 [265 Cal.Rptr. 737]), but this is not one of them because the outcome of an application to the Commissioner for the fees at issue cannot be regarded as a "fait accompli" (*Sea & Sage Audubon Society, Inc.* v. *Planning Com., supra*, 34 Cal.3d at pp. 418-419). The demurrers were thus correctly sustained without leave to amend under the exhaustion of administrative remedies doctrine. (See *County of Los Angeles* v. *Farmers Ins. Exchange* (1982) 132 Cal.App.3d 77, 83 [182 Cal.Rptr. 879] [exhaustion is legal issue properly resolved on demurrer].)[13] If the Commissioner renders an inadequate award of compensation, then EEF can obtain judicial review of that ruling. (§§ 1858.6, 1861.09; Cal. Code Regs., tit. 10, § 2662.7, subd. (b).)

III.  DISPOSITION

The order of dismissal is affirmed with costs to respondents.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied October 9, 1997, and appellant's petition for review by the Supreme Court was denied December 17, 1997. Mosk, J., Kennard, J., and Chin, J., were of the opinion that the petition should be granted.

---

[13]Although the trial court incorrectly referred to the primary jurisdiction doctrine in dismissing the case, our review extends to results not reasons (*Squire's Dept. Store, Inc.* v. *Dudum* (1953) 115 Cal.App.2d 320, 331 [252 P.2d 418]) and dismissal was the correct result.